# CASES DETERMINED

IN THE

# SUPREME COURT OF NEBRASKA

## SEPTEMBER TERM, 1912.

JOHN FORREST, APPELLANT, v. NEBRASKA HARDWARE COM-
PANY ET AL., APPELLEES; C. S. SALISBURY ET AL.,
APPELLANTS.

FILED SEPTEMBER 28, 1912. No. 16,730.

1. Corporations: TRANSFER OF ASSETS TO STOCKHOLDERS: VALIDITY.
Transactions between stockholders and members of the board of
directors of a corporation, by which the property of the corpora-
tion is transferred to one of such stockholders and directors,
when attacked by another stockholder, will be examined by the
courts with care, and when a want of good faith, fraud or in-
adequacy of consideration is shown, such sale will not be upheld.
But where the proposition of purchase is made to the board and
accepted, and also submitted to a meeting of the stockholders and
accepted by a majority of them, and the transaction appears
fair and free from fraud and upon a reasonable consideration, a
court of equity will not declare such sale invalid.

2. ———: MISAPPLICATION OF FUNDS: APPOINTMENT OF RECEIVER.
Where, in a proper action, it is shown that the managers and
head officers of a corporation have unlawfully withdrawn the
funds of such corporation and applied them to their own use, a re-
ceiver will be appointed to take charge of the affairs of the cor-
poration, unless the funds so withdrawn are restored and the
corporation and stockholders are indemnified against further
illegal acts by such officers.

3. ———: DISCRIMINATION AGAINST STOCKHOLDER: INJUNCTION. It is
the duty of the managing officers of a corporation to consult, pro-
tect and conserve the interests of all stockholders alike and with-
out discrimination. Discrimination against a stockholder by
which the value of his stock is unjustly depressed will justify
the interposition of a court of equity and the unlawful acts of
such managers will be enjoined.

(735)

4. **Costs.** The expense of correcting the management of the financial affairs of a corporation by suit in court, or, in case of failure thereof, the appointment of a receiver, including the compensation of counsel, may be chargeable against the defendant corporation.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed with directions.*

*Burkett, Wilson & Brown* and *J. C. McNerney,* for appellants.

*E. C. Strode, Jesse L. Root, M. V. Beghtol* and *Field, Ricketts & Ricketts,* contra.

REESE, C. J.

This action was commenced in the district court for Lancaster county by plaintiff, a stockholder, against the Nebraska Hardware Company and the officers and other stockholders thereof, the object and purpose being the appointment of a receiver, the closing up of the business of the corporation, and the cancelation of an alleged fraudulent sale by the corporation to Leon Baker and the Baker Hardware Company. The pleadings and record are very voluminous, and it seems necessary that the issues be stated in some detail. It is alleged in the petition that plaintiff is the owner of 90 shares of the capital stock of the Nebraska Hardware Company, of the par value of $9,000; that the defendant Leon Baker is the owner of stock of said company to the extent of $16,000 par value, and was a member of the board of directors and the treasurer of said company. It is alleged, in substance, that the officers and members of the Nebraska Hardware Company entered into a conspiracy to depress the value of the stock of the company owned by plaintiff, and, in pursuance of their plans and purposes, caused to be entered upon the records an alleged increase of compensation of the stockholders, except plaintiff, of 6 per cent. of the amount held by each, the same to be paid by the

issuance of the stock of said company under the guise of increasing the compensation of employees, when in fact many of the persons whose holdings were thus increased were not employees at all, and that, in pursuance of the conspiracy, the officers and stockholders had pretended to exchange $20,000 worth of the goods and wares in the stock of hardware to the said Baker for his $16,000 of stock, but which sale was illegal, fraudulent and void; that, in order to force plaintiff to surrender his stock in the corporation, they had unjustly and wrongfully conspired together to cause the son of plaintiff to be charged with the crime of embezzlement and incarcerated in jail, and demanded the surrender of plaintiff's stock in order to secure the release of the son. Other charges are made against defendants, including gross mismanagement of the business, and withdrawal of funds thereof by defendants, but which it may not be necessary to set out here at length. Enough is alleged which, if proved, would require the closing and winding up of the business of the company and the cancelation of the sale to Baker and the Baker Hardware Company.

The defendant James Fawthrop answered, and by cross-petition joined with plaintiff in seeking the relief asked, and setting up at length the wrongs, misstatements and mismanagement of the other defendants in the control of the business of the corporation, as well as the wrongful appropriation of the funds thereof to their own use. An answer and cross-petition was also filed by defendant Salisbury, containing substantially the same averments and prayer for relief as that of Fawthrop. Answers were filed by the remaining defendants, in which the corporate character of the Nebraska Hardware Company is admitted, as well as the relations which the defendants Jakway, James Fawthrop, Crosby and Leach as the board of directors sustain to said company. The averments of the petition as to the fraudulent acts of the members of the board or the stockholders are denied, as well as the averments charging the fraudulent issue of stock. All acts of mal-

50

versation on their part are specifically denied. It is alleged that the resolution directing the issue of stock to employees and stockholders, referred to in the petition as having been adopted January 30, 1909, was rescinded soon after its adoption, and that no certificates of stock were ever issued thereunder, and that no increase of salary or compensation to employees was made. The sale of a portion of the stock of goods on hand to the defendant Baker and the surrender of his shares of stock are admitted, but it is alleged that the sale was made in good faith, for adequate consideration, to meet a financial emergency in order to protect the credit of the hardware company, and was fully justified by the conditions then existing. The Baker Hardware Company (the successor to Leon Baker) answered, admitting the corporate character of the Nebraska Hardware Company, and alleging that Leon Baker was the owner of $16,000 par value of the stock of said company prior to the trade and purchase hereinafter referred to; that the Nebraska Hardware Company was engaged in both the wholesale and retail trade in hardware in Lincoln, and that said company desired to abandon the retail trade, giving its exclusive attention to the wholesale business; that Baker made a written proposal to the Nebraska Hardware Company to surrender his $16,000 of capital stock for $20,000 worth of the retail portion of the stock on hand at the selling price of said company; that the proposition was fully considered by the directors and stockholders of the said Nebraska Hardware Company, and accepted; that thereafter he organized the Baker Hardware Company, and on the 23d day of March, 1909, the said retail stock of goods was invoiced and the possession thereof transferred to him, and he had since said time engaged in buying to and selling from said stock and conducting a retail business. It is alleged that the stockholders of the Nebraska Hardware Company are estopped to question the validity of said transaction. The averments of the petition and cross-petitions are denied. Replies were filed to the answers

and cross-petitions. It is not deemed necessary to notice the pleadings further.

A trial was had, which resulted in findings and decrees which will be noticed in the order in which they occur, and upon each branch of which we devote such attention as the case may seem to demand, without extending this opinion to greater length than may be necessary. The findings are generally in favor of plaintiff and the cross-petitioners Fawthrop and Salisbury, as against the defendants, except the Baker Hardware Company. The finding is in favor of that company, and the sale to and purchase by it of the retail portion of the stock of goods is confirmed. The decision of the district court upon this part of the case furnishes the principal contention on this appeal by plaintiff and cross-petitioners.

At and prior to the time of the exchange of the capital stock for the goods, Leon Baker was a member of the board of directors and the treasurer of the Nebraska Hardware Company. To say the least, his relation to that corporation and its stockholders would demand the utmost good faith in dealing with the property of the company. The original transaction, it is said, grew out of a desire on the part of the management to discontinue the retail trade and devote the whole of the funds and energies of the company to the wholesale business. With this in view, notices were published in the newspapers announcing the desire to sell, and that the property was for sale. No buyers were produced, and on the 15th day of March, 1909, Leon Baker submitted the following proposition to the board of directors, and of which he was then one: "Nebraska Hardware Company, Wholesale Hardware, Corner 9th and O streets. Lincoln, Nebr., Mch. 15, '09. To the Directors of the Neb. Hdw. Co. Gentlemen: As you desire to sell the retail business dept. of the Neb. Hdw. Co., I hereby submit to you the following offer: Will give you sixteen thousand dollars ($16,000) worth of the Neb. Hdw. capital stock for twenty thousand dollars worth of mdse. and fixtures, invoiced at your regular wholesale

prices, and take a lease for term of years on the south storeroom at 100 per month, including the basement running from a point on east side of elevator, toward front, including all areaway under front walk, and middle room in south basement. I will further agree to exchange, from my stock to your at all times as far as possible to do in fairness to each other and on an equitable basis, further that business may not be disturbed to great an extent, will suggest that we invoice the mdse. as it now stands, but changing such items as may hereafter be found to more properly belong to either wholesale or retail stock to such stock. Respt. yours, Leon Baker." A meeting of the board was held on that day, and it is recorded that "a proposition as per attached (memo) was made by Mr. Leon Baker to purchase the retail department. A motion was made by Allen Crosby, and seconded by A. H. Holcomb, to accept the proposition. The motion was carried by all the votes." Signed by the secretary, to which is annexed the corporate seal of the Nebraska Hardware Company. This record does not show whether a full quorum of the board was present or not. There is a paper attached to the record, but not identified as an exhibit, showing that on April 27, 1909, "a special meeting of the stockholders of the Nebraska Hdw. Co. was held, at their office, to consider the sale of the retail department to the Baker Hdw. Co." We are unable to find any reference to notice given the stockholders of this meeting. A list of stockholders present is given, showing the amount of stock held or represented by each. The total number of shares represented appears to be 546, constituting $54,600 par value of the stock. The capitalization of the corporation is $87,000, leaving $32,400 of the par value, or 324 shares, unrepresented. Plaintiff was represented by his attorney, as proxy, and voted his 90 shares against the sale. Defendant Salisbury voted for it. This gave a vote of 456 shares, or 20 more than a majority of all the stock, in favor of the sale, and 90 shares against it. The 160 shares held by Baker prior to that time were not represented nor

voted.  Deducting this from the 870 original shares would leave the capital stock at 710 shares, or 164 shares unrepresented.  Aside from the proceedings of the board of directors, it is hard to say, under the evidence submitted, what the legal effect of that meeting would be.  The consideration paid might be a subject properly to be investigated.  There is a conflict as to the value of the capital stock exchanged for the property.  The range of testimony is from 90 to 100 per cent. of the par value.  The price paid for the goods was fixed at the "selling price" of the company, which was 20 to 25 per cent. above the wholesale price, or that much above what new goods could have been bought for if purchased from the wholesale trade. Making this allowance, it does not appear that the difference in values was so great as to conclusively suggest fraud or bad faith.  A subsequent transaction presents a more serious question.  It appears that after the completion of this purchase, and after Baker had severed his relation to the Nebraska Hardware Company, that company was in need of the sum of $5,000 to meet a past-due promissory note in a local bank, and that suit had been brought on the note and judgment was about to be rendered against the company.  At that time Baker, or the Baker Hardware Company, offered to provide the $5,000 to pay the note, taking $10,000 worth of goods from the retail department in exchange therefor at the same price as paid for the goods on the previous purchase, and this offer was accepted.  This would probably mean goods at the wholesale price of $7,500, or thereabouts.  But, as in the former instance, many of the goods so purchased were somewhat out of date, shelf-worn, having been in stock a long time, and not marketable to the same extent as would have been the case had they been new.  This might excuse the sacrifice, if one were made.  While there are many things connected with these two transactions which can scarcely be commended, yet, since the majority of the stockholders approved both, and the corporation itself made and is satisfied with the sales, we hesitate at this late day, after

the transactions, to reverse the decree of the district court and invalidate the sales. We fully recognize the rule stated in *Miller v. Brown,* 1 Neb. (Unof.) 754, and *McLeod v. Lincoln Medical College,* 69 Neb. 555, but it is doubted if those cases can be applied here. We think the decree of the district court, in so far as it is to be applied to the transactions with Baker and the Baker Hardware Company, should be affirmed. It is from this part of the decree that plaintiff and cross-petitioners appeal.

The court found, as the evidence clearly shows, that defendant Jakway was insolvent and was indebted to the Nebraska Hardware Company for funds withdrawn therefrom. He was the vice-president of the company, and, owing to the decease of the president, was and had been its active manager. But the finding does not disclose the exact extent of his indebtedness. It is also found that defendant Crosby was indebted to the company, but there is no finding as to the amount nor as to his insolvency; that plaintiff and cross-petitioners are entitled to an injunction against those two, restraining them from increasing their indebtedness; that plaintiff and the cross-petitioners are entitled to a bond with good and sufficient surety indemnifying them against the unlawful acts theretofore done or that may thereafter be done by the defendants Jakway, Crosby and John Therkelson, the latter having been at a later date entrusted to some extent with the management of the business affairs of the Nebraska Hardware Company; that plaintiff and cross-petitioners were entitled to have a receiver for the company appointed, unless the defendant Jakway and Crosby repay into the funds of the company the amounts owing by them, and the bond given within 40 days from the rendition of the decree; that, upon failure so to do, a receiver would be appointed upon motion of plaintiff and cross-petitioners, with power to close up the business of the company. A general injunction was allowed as against William E. Jakway, Allen Crosby, George D. Leach, John Therkelson, J. H. Bracken and A. H. Holcomb, enjoining

them perpetually from becoming further indebted to the Nebraska Hardware Company or in any manner appropriating its funds to their individual use. This decree was rendered December 24, 1909. We have no information as to a compliance with the order of the court for the repayment of the funds unlawfully withdrawn, nor as to the management of the affairs of the business of the company since that time.

We have been impressed by a perusal of this record that the business of the company has been recklessly handled by those in charge, and cannot avoid the conclusion that the district court was fully justified in seeking to promote the honest administration of its affairs. We are also persuaded that much of the mismanagement has been, to some extent at least, for the purpose of depressing the value of plaintiff's investment in the stock of the company, causing him to either surrender it or sell it at a sacrifice. He, at one time, was active in the management of the business of the company. He removed to another state, his son being left in the employment of the company. Later the son joined his father. Subsequently to that time another employee was suspected of purloining the goods and money of the company. It is said that the alleged guilty party made a confession in writing in which he implicated plaintiff's son, but the written statement is not to be found in this record. On August 19, 1908, a telegram was sent to plaintiff requiring his immediate presence in Lincoln. This was followed the same day by a letter explaining that the son was charged with a participation in the embezzlement. The father left his home at once, and before the receipt of the letter which fell into the hands of the son. The son thereupon telegraphed his father at Lincoln that he was coming, and did so. Soon after his arrival in Lincoln he was arrested without a warrant and placed in jail, notwithstanding his voluntary return and assertion of innocence. He was held in the jail for a short time, but long enough for the proposition to be made to the father that the matter could be settled with-

out publicity by a surrender of his stock. This he did not
agree to, and the son was released. It is claimed that the
officers of the company did not direct the arrest, and upon
that plea they were exonerated by a direction of the court
to the jury in a civil action tried in the federal court,
while the verdict went against the irresponsible officer
who made the illegal arrest. If people could know their
rights and resist such outrages in proper cases, such ac-
tions might not be so frequent.

On the 30th day of January, 1909, a meeting of the
board of directors was held, when a motion was made by
W. E. Jakway and adopted by the board "to allow the
following emplies (employees) as salary and additional
salary" the sums stated in the resolution, "to be paid to
them during the year 1909." The list comprised every
stockholder, except plaintiff, whose name was omitted.
The amount thus voted totaled $4,572, and of which Jak-
way and his wife were to receive $1,536, Baker $960,
Crosby $576, and others in smaller amounts; each allow-
ance being equal to 6 per cent. upon the stock held. Many
of the persons voted this bounty were not employees of
the company. It is true that it is said that this resolution
was subsequently rescinded and none of the money was
paid, yet the fact of such action is at least suggestive of
a dishonest purpose and discrimination in its inception.
At another time, the company being indebted to Jakway,
he applied to the person in charge of the records and books
for the issuance of a certificate of stock, dating it back
one year in order that he might receive a dividend thereon,
but which was refused and not issued. These and other
facts which might be mentioned clearly justified the dis-
trict court in requiring unquestioned indemnity against
further acts of the kind sought to be guarded against.
Indeed, it is doubtful if the interests of plaintiff will be
thus effectually protected.

From the length of time intervening since the trial,
with no record before us of any subsequent move made
by plaintiff, we are led to believe that the money wrong-

fully withdrawn has been returned to its proper fund and security given as required by the decree of the district court. Should such not be the case, or should it be shown that further mismanagement has occurred, that court should at once appoint a receiver to take charge of the business and honestly administer its affairs in the equal interest of all the stockholders.

It is shown that the indebtedness of Jakway to the company is in the neighborhood of $2,000 to $2,600, and that of Crosby is some $600. However, these amounts are not exact. This action on the part of plaintiff secures the payment to the company of the amounts due, and security for correct management of the company's affairs in the future, or, in case of failure of either, the appointment of a receiver. The result of the suit inures to the benefit of the stockholders generally, as well as promoting the best interests of the corporation. That there was a necessity for such an action is quite apparent from this record. An application was made to the district court for the allowance to plaintiff of his expenses in the way of counsel fees, but it was refused, and the same is renewed here. We are persuaded that, under the peculiar circumstances as shown by the whole record, an allowance ought to have been made. It is therefore ordered that the sum of $400 be allowed plaintiff for his said expenses, and that the same be taxed as costs, together with costs of this court, against the defendant the Nebraska Hardware Company. *Stone v. Omaha Fire Ins. Co.,* 61 Neb. 834.

Subject to the conditions named, the decree of the district court is affirmed, but the cause is remanded to that court for the entry of such supplemental orders as may be necessary to carry into effect the terms of this opinion.

AFFIRMED.