## RIVERSIDE OIL & REFINING CO. et al. v. LYNCH et al.

No. 13646—Opinion Filed July 7, 1925.

Opinion Withdrawn, Corrected, and Refiled, and Rehearing Denied Dec. 15, 1925.

(Syllabus.)

**1. Appeal and Error—Conclusiveness of Findings of Referee.**

Under section 559, C. O. S. 1921, where a referee is appointed and makes a report of findings of fact, the report has the effect of a special verdict, and where reasonably supported by the evidence, will not be disturbed on appeal.

**2. Corporations—Right of Minority Stockholders to Sue Defaulting Officers.**

Minority stockholders may sue defaulting officers in behalf of the corporation to recover property fraudulently appropriated by them, and for the redress of other fraudulent and ultra vires acts.

**3. Same—Right of Stockholders to Receivership.**

Where, in an action by minority stockholders in behalf of the corporation against its officers, and those in charge of said corporation who had converted its assets to their own use and benefit and had unlawfully issued stock and had intermingled the funds of said corporation with their own in such a way that the exact amount of money on hands belonging to said corporation could not be determined, thereby destroying the value of the stock of the corporation, a court of equity will appoint a receiver of the corporation, because otherwise the rights of the minority stockholders could not be protected.

**4. Same—Corporation Not Dissolved by Receivership.**

The appointment of a receiver of a corporation in a suit by minority stockholders in behalf of a corporation against the officers does not necessarily result in dissolution of the corporation.

**5. Same—Fraudulent Issue of Stock—Cancellation by Court.**

Stock in a corporation issued by its officers and directors without consideration, as a gift, is fraudulent and void and should be canceled by a court of equity.

Error from District Court, Oklahoma County; Hal Johnson, Assigned Judge.

Action by S. D. Lynch and others against the Riverside Oil & Refining Company and others. Judgment for plaintiffs, and defendants bring error. Affirmed.

W. R. Banker, C. Guy Cutlip, Moss & Owen, and Stuart, Sharp & Cruce, for plaintiffs in error.

Twyford & Smith, for plaintiff in error Riverside Oil & Refining Company.

J. B. Dudley, for defendants in error.

CLARK, J. This action was commenced in the district court of Oklahoma county by the defendants in error, plaintiffs below, against the plaintiffs in error, defendants below. For convenience the parties will be referred to as they appeared in the lower court.

Plaintiffs, S. D. Lynch, Rudy Copeland, and other corporate stockholders brought suit against the Riverside Oil & Refining Company, as a corporate entity, and Solon W. Smith, O. O. Owens, E. E. Frasher, and G. R. LeFevre, as its officers and directors, and as individuals, B. L. Brookins, J. C. Cananaugh, C. D. Nelson, and L. J. Marks; the alleged right of action being mismanagement of the said Riverside Oil & Refining Company, collusion and fraud in the conduct of corporate affairs by said officers. Numerous transactions relied upon for a cause of action and material to the determination of the instant case are substantially as follows:

The Riverside Oil & Refining Company is a Delaware corporation with a capital stock of $1,000,000 divided into 1,000,000 shares of the par value of one dollar each, and that there is issued an outstanding of authorized capital stock of said company approximately 580,000 shares; that the defendants are stockholders in said company, owning and controlling a majority of this issued outstanding stock; that plaintiffs are stockholders of said company, owning approximately 120,000 shares of its issued stock; and that this suit was brought for them and other stockholders similarly situated, constituting the minority stockholders of said company. That the defendants Solon W. Smith, O. O. Owens, and G. R. LeFevre are duly elected, qualified, and act-

ing directors of said company and its president, vice president, and secretary, respectively. That the defendant E. E. Frasher is duly elected, qualified, and acting treasurer of said company. That at the annual stockholders' meeting of said company held in January, 1919, W. C. Bentley, the plaintiff Rudy Copeland, and the defendant Solon W. Smith were elected directors of said company for the ensuing year and until the election and qualification of their successors; following, the said W. C. Bentley was elected president, the defendant Solon W. Smith vice president, and the plaintiff Rudy Copeland secretary and treasurer. That in February, 1919, following, said W. C. Bentley resigned as director and president of said company, leaving the plaintiff Rudy Copeland and the defendant Solon W. Smith as the directors and officers of said company, and they continued to act as such until the annual stockholders' meeting of said company held on January 3, 1921, at which time defendants Solon W. Smith, O. O. Owens, and G. R. LeFevre were elected as directors and officers of said company, there being no annual stockholders' meeting held in 1920.

Said defendant company owns and operates, and has since March 1, 1918, owned and operated, an oil and gas mining lease covering 70 acres of land situated on the Cimarron riverbed, Creek county, Okla., known as the Clover Leaf lease, on which there are now, and have been for more than two years, 13 producing oil wells with an average daily production of 150 barrels. That said company owned no other property of any consequence other than said riverbed production, except a note of $20,000 secured by a mortgage on the Equality Refinery at Oilton, Okla. That the total production from said riverbed lease from March 1, 1918, to November 30, 1920, was in the sum of $424,863.46. Plaintiffs further allege that they do not know, have been unable to ascertain, the exact financial condition of the defendant company, but their best information is that its assets exceed its liabilities, that it is solvent, and that their stock has some real value, but on account of the present and past two years' mismanagement of said company by the said defendants, Owens and Smith, and the fraud and collusion of them and certain other of the defendants herein, said company now is on the verge of and in imminent danger of insolvency, and if the present management is continued for any great length of time, said company will become hopelessly insolvent and the investment of these plaintiffs and other stockholders similarly situ-

ated will be entirely lost. That said Smith and Owens have controlled and managed said company and outlined its business policies for the year 1920 and the greater portion of the year 1919, and are now in absolute control and management of said company. That the other defendants herein are subservient to their wishes and desires. That the defendants herein have paid but little, in fact, not exceeding ten cents per share for controlling interest in the defendant company; that they are what might be termed gratuitous stockholders, whereas the plaintiffs herein are actual stockholders, the greater portion of whom paid the par value in cash for their stock. That the manner of acquiring stock by the defendants was as follows: That W. C. Wolfe died January 16, 1919, and at the time of his death was the owner of approximately 142,000 shares of capital stock of the defendant company. Shortly after his death his widow, Gladys Wolfe, through her attorney, the defendant Solon W. Smith, was appointed administratrix of his estate. The administratrix of the Wolfe estate, through the defendant Smith, sold to the defendant Owens 136,000 shares of the Wolfe estate stock for $20,000, evidenced by note secured by said stock as collateral. At the same time the defendant Smith, with the knowledge and consent of the defendant Owens, had re-issued to Gladys Wolfe, individually, as the surviving widow of W. C. Wolfe, deceased, 9,500 shares of company stock, which as a matter of fact belonged to and was the property of the Wolfe estate. At the request of Smith said Gladys Wolfe sold to the defendant Owens said 9,500 shares of stock for $2,500, evidenced by a note which was afterwards paid. Controversy arose between the defendant Owens and Mrs. Wolfe with reference to the purchase of said stock, in which he claimed, among other things, that he had been misled and deceived by the defendant Smith and on account thereof he declined to pay said note, following which, in the office of the defendant Smith, on Sunday, Mrs. Wolfe was induced to and did settle said note with the defendant Owens for a little less than $6,000. And as a result of this transaction the defendant Owens secured 145,500 shares of company stock for less than $8,200. Smith further represented to the plaintiff Copeland that the defendant Owens was a personal friend of his; that he was endeavoring to get him to purchase the Wolfe estate stock and become actively interested in the management and affairs of the company, and that he could not do so unless the company secured an interest in a drilling contract of the defendant Brookins cov-

ering 37½ acres of land located in the Desdemona, Texas, oil field, known as the Pearson or Crescent lease; that he and Owens had made a personal investigation of the lease covering said acreage and that a well was then on top of the producing sand, and on account of the defendant Brookins' financial condition the company could acquire an undivided one-half interest in said drilling contract for 100,000 shares of its stock and the assumption of one-half of the drilling expenses of the well, which defendant Brookins would guarantee not to exceed $20,000; and thereupon urged the plaintiff Copeland as the other director of the defendant company to consent to the purchase of said drilling contract. Relying upon the judgment, representations, and statements of the defendant Smith, Copeland consented to the purchase thereof, and the defendant company issued to the defendant Brookins 100,000 shares of the capital stock and executed two notes of $10,000 each, one to the defendant Brookins and the other to the defendant Owens. Plaintiffs allege that as a matter of fact said lease was worthless and the defendant Smith never at any time made an investigation of said lease and knew nothing about its value, location, and surroundings; and that the defendant Owens knew, or should have known, that said lease was worthless and of no value. That the company's two notes of $10,000 each were settled for $13,500. That the net loss of the company in this transaction was $13,-500 in cash and 100,000 shares of its capital stock. That a short while after the consummation of said deal with defendant Brookins, he transferred to the defendant Owens 80,000 shares of said stock, and that the same now is, and ever since has been, stock upon the books of the company in the name of the defendant Owens, and the remaining 20,000 shares stands in the name of the defendant Brookins.

In June, 1920, the defendant Owens, and Frasher, who is the bookkeeper, in furtherance of their scheme and plan to secure controlling interest in the defendant company, caused a false and fraudulent statement to be made out and sent to the plaintiff herein and other stockholders similarly situated, purporting to show the condition of said company as of December 31, 1919; which statement, in order to boost down the price of stock, charged off and created a deficit fund of over $340,000. At the time this statement was prepared and sent out, defendant Owens was endeavoring to buy stock in the defendant company, and had made repeated efforts to buy the stock of the plaintiff Copeland. And as a re-

sult of this transaction the defendants, Smith, Owens, LeFevre, Frasher, Nelson, and Marks, purchased additional stock from the stockholders for a ridiculously low price. And by the issuing by the corporation at the direction of Smith and Owens to the defendants Le Fevre and Frasher of about $10,000 of bonus stock, the defendants herein acquired and became the owners of the controlling interest in the defendant company.

In June, 1920, at the instance and request of the defendants Owens and Smith, the offices of the company were moved to Tulsa and placed in charge of the defendant Owens with the understanding that he was to advise and superintend operations of the company on its riverbed lease, pay its debts and obligations. That shortly prior to this the defendant Owens had made a drilling contract, with persons whose names are unknown to these plaintiffs, to drill a test well on 160 acres of land near Kelleyville, Okla., in an unimproved field for an undivided one-half interest in the lease covering the same, which said test well was to be completed by January 15, 1921. Said drilling contract provided, among other things, that there should be a producing well by said date, otherwise no rights would attach thereto to the lease covering said acreage. That shortly before or after the making of this contract the defendant Owens acquired large acreages of oil and gas leases surrounding said well, which well offset one of said leases. And in addition to the leases which he acquired he owned the fee to 80 acres in the neighborhood of said well, and it was to his individual interest to have said test well drilled. Without the knowledge or consent of the plaintiff Copeland, the other member of the board of directors, and secretary of the defendant company, the defendant Smith claimed to act for and on behalf of the defendant company, attempted to make a contract with the defendant Owens by which he was to transfer said drilling contract to the defendant company, it to assume the drilling obligations. At the time this attempted arrangement was made the defendant company was largely indebted to the defendant Owens and others in a sum exceeding $75,000, evidenced by past due notes secured by a mortgage upon the riverbed production. That notwithstanding the fact that the company was unable to pay past due obligations the defendants Smith and Owens expended in drilling said test well more than $52,000 of the company's money, leaving the indebtedness to accumulate and subject the property of the defendant company to foreclosure. That

the defendants Owens and Smith purposely concealed from the plaintiff Copeland the fact that they were using the funds of the company until about the middle of December, 1920, when he ascertained what really had been done; that thereupon he protested against the conduct of said defendants and requested them to reimburse the company for the money so unlawfully expended, but they declined to do so. Plaintiffs further charged that said lease was of little or no value and that the expenditure of said sum was not only unwise, but was unlawful and void and of no effect and not binding upon the defendant company and the stockholders thereof. Plaintiffs further alleged that Owens and Smith, together with their associates, the other defendants herein, who were in control of said company, called a stockholders' meeting to be held on January 3, 1921; that at this meeting the defendant Owens represented that said Kelleyville lease was one of the greatest assets the company had, was reasonably worth one-half million dollars, that he would welcome a proposition from the stockholders to reimburse the company for the amount expended in connection therewith and take the same over as his separate property. Whereupon certain of these plaintiffs who were present at the meeting made a motion to accept his proposition. And upon a roll call he and all the other defendants herein, a portion of whom he represented by proxy, voted against the proposition.

The plaintiffs further charged that in November, 1918, the defendant company made a contract with P. E. McGee, trustee of Tulsa, Okla., and on behalf of the Union Bank of Tulsa, by the terms of which he was to furnish certain funds to pay off certain notes of the company as they matured from time to time, as a consideration for which said company agreed to pay said McGee, as a bonus for securing said funds, 25 cents per barrel for all oil runs for a given length of time. That the defendant Owens for his individual account purchased said contract from said trustee for $4,500. Whereupon said trustee assigned said contract to him and he thereafter took charge of said contract and collected the 25 cents per barrel premium paid thereon, as a result of which he profited in the sum of $6,000. This conduct on his part was approved and ratified by the defendant Smith, and the effect of it was an unusual profit to the defendant Owens for carrying an indebtedness for the company which bore a legal rate of interest and which he himself claimed to own.

Plaintiffs further alleged that after the bookkeeping offices of said company were moved to Tulsa and the company's riverbed operations placed in the hands of the defendant Owens, he and the defendants Smith and Frasher unlawfully, without authority, and without any consideration whatever to the defendant company, caused to be issued to the defendants LeFevre, Nelson, and Marks, all associates and employes of Owens, a large amount of the company stock, aggregating at least 7,500 shares. That said stock was issued in fraud of the rights of these plaintiffs and, should be canceled or the defendants compelled to account for the par value thereof.

Plaintiffs alleged that at the meeting of the board of directors, at which time the company offices were moved to Tulsa, it was represented by the defendants Owens and Smith that the defendant Owens had taken up the company's notes of $10,000 and given his own note in lieu thereof, and that it was proper that defendant company execute to Owens a note in like amount to protect him in connection therewith; and upon their representations as to the facts, the plaintiff Copeland believed and relied upon them, and joined the defendant Smith in authorizing the execution of said note to Owens. But as a matter of fact Owens had not taken up the company's note, as represented, nor given his note in lieu thereof. But, following this, the company paid Owens the $10,000 note executed to him in the manner aforesaid; and in the event it develops that Owens did not take up said note as claimed, the defendant Owens should account to the said company for the amount so paid him in connection therewith.

Plaintiffs further alleged that the defendant Owens, prior to the meeting of the stockholders on January 3, 1921, made a contract for a large amount of casing, supplies, and materials to be used in the further development of the Kelleyville lease, the total amount of which will exceed $25,000. And that since the meeting of the stockholders and the election of the defendants Smith, Owens, and LeFevre as officers and directors of said company, they have planned to and will formally accept and ratify the purported contract made by Smith with the defendant Owens in connection with said Kelleyville lease. That it is the plan and purpose of the defendants herein as the officers, directors, and owners of the controlling interest of said corporation to so involve said company in expenditure of its funds in the Kelleyville lease and other leases for the use and benefit of the defendant Owens and his asso-

ciates that the riverbed production will be unable to meet the enormous expenditures, and then will either foreclose the mortgage, which is now owned and controlled by Owens, covering its riverbed production, or cause all the assets to be sold and acquired by themselves for their use and benefit, to the detriment of plaintiffs herein and other stockholders similarly situated, constituting the minority stockholders.

. Plaintiffs pray that a receiver be appointed for said company with power to operate its riverbed lease production, pay its obligations, and preserve and protect its property for the use and benefit of its stockholders and creditors. That the defendants Owens, Smith, and LeFevre, as the officers and directors of said company, should be temporarily restrained and enjoined from further developing said Kelleyville lease, and unlawfully dissipating the company's funds in said enterprise, or enterprises of similar nature. That said defendant Owens should be required to account to said company for the amount so unlawfully expended in connection with said lease. In addition to this, the 9,500 shares of stock so issued to him belonging to the Wolfe estate should be canceled and reissued to the rightful party, in order to save the company from liability in connection therewith. And a judgment should also be rendered against him for the unlawful profit he realized in connection with the McGee contract. And that the bonus stock issued to the defendants Nelson and Marks should be cancelled, or judgment rendered against them for the par value thereof. And in addition to this, the 100,-000 shares of stock issued to Brookins should be canceled as against the defendants Brookins and Owens, and a full and complete account had between each and all the defendants and the defendant company. That the purported contract and agreement by which the defendant Owens claims to have transferred the drilling contract covering the Kelleyville lease to the company be declared null and void, and in the event a formal transfer has been made, that the officers and directors of said company be directed to retransfer the same back to Owens, and that an accounting be had between Owens and the company, and the amount so expended be applied upon his indebtedness against the company, and judgment rendered against him for the balance thereof. And that pending the hearing of the application for a receiver, the defendants Smith, Owens, and LeFevre, as officers and directors of said company, and

the other defendants herein, be temporarily restrained and enjoined from selling or disposing of the company assets, under and by virtue of its charter provisions; and for such other and further relief as they may be entitled, including judgment for costs.

These were substantially the allegations which constituted plaintiffs' cause of action, the allegations as to each of which has been put in issue by the separate answers of the several defendants. The cause went to trial, a referee was appointed to take testimony and to report findings of fact and conclusions of law. After said referee had taken the testimony, made his report of findings of fact and conclusions of law, the trial court found that the report of said referee should be adopted and judgment rendered thereon; that J. B. Dudley, the attorney for plaintiffs herein, should be allowed a fee of $5,000 for his services, and that the same should be paid by the defendant Riverside Oil & Refining Company; that Hon. J. H. Halley should be allowed a fee of $1,000 for his services, which should be taxed as a part of the cost of this action; that a receiver should be appointed for said Riverside Oil & Refining Company, and that V. V. Harris of Oklahoma City is an experienced oil man and a fit and competent person to be appointed receiver; that the evidence relative to the Wolfe estate and the acquisition of its stock in the Riverside Oil & Refining Company by the defendant O. O. Owens is competent and was considered and relied upon by the court.

The court rendered judgment appointing V. V. Harris of Oklahoma City receiver for the defendant Riverside Oil & Refining Company, and directed him to take charge of all books, records, files, correspondence, stock certificates, charter. seal, canceled vouchers, notes, bank book or books, and all property and assets of said company of every kind and character, including monies on hand and in the bank, to make or cause to be made an inventory of all the property and assets of said company of every kind and character; to make or cause to be made a thorough audit of the books and affairs of said company, especially to show the exact condition existing between the said company and the defendant O. O. Owens; to take charge of and operate said company's riverbed lease, to sell and dispose of the production therefrom, pay the operating expenses and valid debts and obligations of said company, and to retain and hold the balance, if any, subject to the further orders of the court; to preserve and protect the company's prop-

erty of every kind and character, and do any and all things necessary to be done in connection therewith, subject to the further orders of the court; this order to become effective upon said receiver taking and subscribing an oath as required by law to discharge faithfully his duties as such, and executing a surety bond in the sum of $50,000, conditioned as required by law, to be approved by the clerk of the court. The court further rendered judgment that the assignment of the oil and gas lease herein from the defendant O. O. Owens to the defendant company bearing date of January 8, 1921, covering the property known as the Kelleyville or Jackson Scott lease, be and the same is hereby canceled and declared the same to be the property of the defendant O. O. Owens, ordered and directed the officers of said company to forthwith reassign said oil and gas lease to said O. O. Owens, and rendered judgment in favor of the Riverside Oil & Refining Company against the defendant O. O. Owens in the sum of $93,324.84, with interest thereon from the ——day of——, the amount of the company's funds unlawfully expended by him in connection with said lease, together with the cost of this action.

The court rendered a further judgment against the defendant O. O. Owens for the additional sum of $2,500, with interest at 6 per cent. from the date of said judgment, for the profit made by him in connection with the P. E. McGee contract. The court rendered a further judgment in favor of the Riverside Oil & Refining Company against the defendant E. E. Frasher, canceling the contract between them, made on the——day of——, 1919, by which he was to receive 5,900 shares of the company stock, and canceled certificate No. 1646 for 2,400 shares of said stock issued August 3, 1920, and certificate No. 1652 for 1,500 shares issued August 11, 1920, making a total of 3,900 shares, was canceled, vacated, and set aside, and restrained the officers of said company or their successors from issuing to him the remaining 2,000 shares of stock under the terms of said contract. The court rendered a further judgment in favor of the Riverside Oil & Refining Company against the defendant G. R. LeFevre, canceling certificates Nos. 1630, 1631, 1632, 1633, and 1634 of 100 shares each of said stock, dated December 17, 1919. The court rendered a further judgment in favor of the defendant B. L. Brookins against his co-defendants herein, that the 100,000 shares of stock issued to the said B. L. Brookins be declared legal and valid.

The court rendered a further judgment against the defendants O. O. Owens, G. R. LeFevre, directors, and vice president and secretary, respectively. of the defendant company, together with the defendant E. E. Frasher as its treasurer, and their successors in office, perpetually restraining and enjoining them from spending and investing any of the company funds in the oil and gas lease hereinbefore referred to as the Jackson Scott lease, and directing them and their successors in office forthwith to turn over and deliver to said receiver upon demand all the books, records, files, property, and assets of every kind and character of said company, and restraining them from interfering or molesting said receiver in possession, management, and operating of the property and business affairs of said company, subject to the further orders of the court. The court further directed said receiver to make a written report to the court showing what he has done and what he is doing as such receiver, and the facts with reference to the condition of the account as between the defendant Owens and the defendant company, and the condition of all other things which in the judgment of said receiver should be reported to the court.

The court rendered a further judgment against the Riverside Oil & Refining Company in favor of J. B. Dudley for $5,000 for his compensation as attorney for the plaintiffs herein. The court rendered a further judgment allowing the referee $1,000 for his services, and the balance due thereon, being the sum of $700, was taxed as cost and the cost taxed against the defendant O. O. Owens.

Each of plaintiffs in error filed a separate motion for a new trial in the court below, and all having joined in the petition in error in this court, have sufficiently presented to this court the alleged errors in the judgment of the trial court.

The assignments of error for the proper determination of this matter by this court are as follows:

"1. The trial court erred in its final decree in disallowing and overruling the several objections and exceptions of defendants below to the referee's report, as set out in the respective motions and objections by them timely filed.

"2. The court erred in its final decree in adopting the reports of the referee, and in entering judgment in accordance therewith, in all respects wherein such decree adversely affects the interests of plaintiffs in error, or either of them.

"3. The court erred in its final decree in canceling the 'assignment of the oil and

gas lease' from the defendant Owens to the defendant company, covering the land known as the Jackson Scott or Kelleyville lease, and in declaring such lease to be the property of the defendant Owens, and in directing the officers of defendant company 'to reassign' the same to said Owens, and in enjoining the officers of the defendant company from expending and investing any of the company's funds on said lease, or in any manner exercising control or ownership over said lease.

"4. The court erred in its final decree in finding, and concluding, that the defendant Owens unlawfully expended any part or portion of the 'company's funds' on the Jackson Scott lease, or 'in connection therewith,' and erred in rendering judgment in favor of the company against Owens on such account in the sum of $93,324.84, or any other sum; and in assessing the costs of the suit against defendant Owens.

"5. The court erred in its final decree in rendering judgment in favor of the defendant company, against defendant Owens, in the sum of $2,500, or in any other sum, on account of the P. E. McGee transaction.

"6. The court erred in its final decree in canceling the contract between the defendant company and E. E. Frasher, by which, for services rendered, the latter was to receive 5,900 shares of the company's stock, and in canceling the 3,900 shares of stock already issued, and in restraining the defendant company from issuing the remaining 2,000 shares of stock.

"7. The court erred in its final decree in canceling 500 shares of stock issued to the defendant LeFevre, for services rendered.

"8. The court erred in its final decree in appointing a receiver for defendant Riverside Oil & Refining Company.

"9. The court erred in its final decree in rendering judgment in favor of plaintiff's attorney against the defendant company, in the sum of $5,000, or in any other sum.

"10. The court erred in its final decree in its holding that the evidence relative to the Wolfe estate stock, acquired by the defendant Owens, was competent, and in considering, and relying upon, such incompetent evidence in the determination of the case as affirmatively appears was done.

"11. The court erred in its final order overruling, and not sustaining, the respective motions for a new trial of the several defendants below.

"12. The court erred in its final order overruling, and not sustaining, the respective motions of the several defendants to vacate and set aside the order appointing a receiver."

Assignments of error 1 and 2 go to the entire case, and the same will be disposed of by the disposition of the various other assignments of error. Assignments of error 3 and 4 go to question of what is known as the Jackson Scott or Kelleyville lease.

The referee found that about the 16th day of July, 1919, at a special meeting of the board of directors, the bookkeeping offices of the company were moved to Tulsa, Okla., and placed in charge of O. O. Owens, and he was given authority to sign checks covering necessary operating expenses of said company, and that thereafter, up to and including January 3, 1921, the entire management of the company was left in the hands of the defendant O. O. Owens. That under the management of the said O. O. Owens and the superintendent of the leases, the defendant G. R. LeFevre, the riverbed production of said company was materially improved. That the financial condition of said company had been improved. And that O. O. Owens without the assistance of the board of directors treated said property very much as if it had been his own property, intermingling his own accounts with the accounts of said company in such a fashion that it is difficult for the referee to determine what expenditures of the company's funds were made on behalf of the company and what expenditures on behalf of the defendant O. O. Owens.

The referee further found that on August 24, 1920, the defendant O. O. Owens, being under a contract with one H. C. Wilson and Frank Barnes of Tulsa, Okla., to drill a well on property located in Creek county (omitting description) known as the Jackson Scott lease or Kelleyville lease, commenced the drilling of a well on said lease and that defendant O. O. Owens expended of the company's funds upon said lease up to December 31, 1920, the total sum of $93,324.84. The referee further found that probably other sums of the company's funds were expended on said lease during the year 1920, and that other sums have been expended on said lease of funds belonging to said company by the defendant O. O. Owens since January 1, 1921, but the evidence introduced herein does not disclose the amount of such other expenditures, and that it would require an audit of the books of said defendant Riverside Oil & Refining Company to determine the exact amount of money expended by the defendant O. O. Owens upon said lease.

The referee further found that at the time the said O. O. Owens began operations on the said Jackson Scott lease he, the said O. O. Owens, was the owner of the said Jackson Scott lease and leases surrounding

the same. The referee further found that the expenditure of such funds of the company upon the Jackson Scott lease was not known to the members of the board of directors until after the greater part of such sums had 'een expended, and that no meeting of the board of directors was held authorizing said expenditure. The referee further found that on January 8, 1921, said defendant O. O. Owens executed an attempted assignment of the said Jackson Scott lease to the defendant Riverside Oil & Re fining Company.

The referee further found that a meeting of the stockholders of said company was held at Oklahoma City on January 3, 1921, and at said time the defendant O. O. Owens offered to repay to the company said sums of money so expended by him and to take said lease and equipment, and that said offer was rejected by a vote of said stockholders' meeting. The referee further found that the said Owens and his associates held a controlling vote of the stock represented at said meeting, and that he voted said stock against his own proposition.

We have examined the record in this case, and we find that this finding of the referee is not against the clear weight of the evidence, but is amply supported by the evidence in the record. The referee in his conclusions of law finds as a matter of law that the expenditures of said sums of money, referred to in findings of fact herein, by the said O. O. Owens were illegal and unauthorized, and the said O. O. Owens should be compelled by proper judgment of this court to make restitution of such sums to the defendant Riverside Oil & Refining Company. We know of no law which would permit the general manager, or one in charge of the affairs of a corporation, to spend large sums of money belonging to said corporation in the development and improvement of his own property and charge the same to the corporation. Said act on the part of the defendant O. O. Owens was fraudulent and in violation of the trust imposed in him.

It is contended by plantiffs in error that at the meeting of January 3, 1921, at Oklahoma City, stockholders of said company ratified the act of the said O. O. Owens in expending said sum in development of Kelleyville or Jackson Scott lease. With this contention we cannot agree, for the reason that a vote to ratify said act was not before said stockholders' meeting; it was a proposition made by O. O. Owens to repay to the company said sum of money so expended by him and take said lease and equipment. The lease at that time belonged to O. O. Owens, as the same was not assigned to the company, and no attempted assignment was made until January 8, 1921. We, therefore, hold that said action of the stockholders was not a ratification of the expenditure of said funds, and the judgment of the trial court was not error.

Defendants, plaintiffs in error, contend that the court erred in rendering a judgment in favor of the Riverside Oil & Refining Company against the said O. O. Owens in the sum of $2,500 on account of the P. E. McGee transaction. In the referee's finding of fact pertaining to the contract between the Riverside Oil & Refining Company and one P. E. McGee, and the purchase thereof by Owens with his own individual money, it appears from testimony that it was found as a fact by the referee that Owens made a profit of $2,500, and concluded as a matter of law that Owens while acting in a fiduciary capacity would not be permitted to profit in his dealings, in behalf of the company, with himself, it not appearing that he was specifically authorized by the board of directors or general manager to make such contract or to make such $2,500 profit upon said contract. It is our opinion, therefore, that the referee's conclusion of law and the court's judgment thereon as to the McGee contract are correct, and that the court did not err in rendering judgment in accordance with the referee's finding of fact and conclusion of law. It is a sound and settled doctrine that a person, acting in a fiduciary capacity for others, in dealings with himself, will not be permitted to give himself an advantage which is detrimental to those for whom he acts. See 39 Cyc. 296-8 (b), and cases cited.

It is next contended the court erred in its final decree in canceling the contract between the defendant company and E. E. Frasher, by which the latter was to receive 5,900 shares of the company stock, and canceling 3,900 shares of stock already issued, and restraining the defendant company from issuing the remaining 2,000 shares of stock. This contract was entered into and stock issued to the defendant E. E. Frasher for alleged services rendered to the defendant company. And the referee, after hearing the evidence, found that the said E. E. Frasher was not an employe of the company, and further found as a matter of law that the stock issued to the defendant E. E. Frasher was void and without consideration, and that the contract therefore is void and should be canceled. We must, therefore, conclude that the trial court did not

commit error in rendering a decree and judgment canceling said contract and said stock.

Defendants, plaintiffs in error, assign as error the judgment of the court canceling 500 shares of stock issued to the defendant LeFevre for services rendered. The referee found that the 500 shares of stock issued to said LeFevre was issued to him as a Christmas gift and was without consideration, and concluded as a matter of law that said stock so issued to the defendant was void and should be canceled. And the court committed no error in rendering a decree and judgment canceling said stock

We will next consider assignment of error No. 10, that the court erred in its final decree in its holding that the evidence relative to the Wolfe estate stock, acquired by the defendant Owens, was competent, and in considering, and relying upon, such incompetent evidence in the determination of the case as affirmatively appears was done. In this connection we will consider the acquiring of 100,000 shares of unissued treasury stock of said company by B. L. Brookins It appears from the referee's findings and the record that at the instance and request of the defendant O. O. Owens, on the 17th day of February, 1919, the Riverside Oil & Refining Company entered into a contract with one B. L. Brookins whereby said defendant company sold to said B. L. Brookins 100,000 shares of its unissued treasury stock for an undivided nine-thirty-seconds (9-32) interest in a well being drilled on what is known as the Pearson lease, Comanche county, Tex., containing approximately 37 acres, and also assumed certain unpaid indebtedness against said well not to exceed $20,000. Said indebtedness was later settled for $13,500. The referee found that 80,000 shares of said stock stands in the name of the defendant O. O. Owens, and according to the testimony O. O. Owens holds the same in trust for the said B. L. Brookins. Said well, or Pearson lease, proved of no value and the company thereby lost 100,000 shares of its stock and $13,500.

The referee furhter found that said W. C. Wolfe was one of the original organizers of said company, and at the time of his death he owned approximately 145,000 shares of stock in the said Riverside Oil & Refining Company. After the death of said W. C. Wolfe, his widow, Gladys Wolfe, was appointed administratrix, and upon the direction of the defendant Solon W. Smith, as the secretary of said company, there was issued to the said Gladys Wolfe in her own right a certificate of stock for 9,500 shares of the stock of said company, it being the contention that Dr. Wolfe had told her in his lifetime that he had transferred this number of shares to her. This individual stock was sold to the defendant O. O. Owens for a consideration of $2,500, which was later paid. The remainder of said stock, consisting of 136,000 shares, was contracted by the administratrix, Gladys Wolfe, to the defendant O. O. Owens at the agreed price of $20,000. Owens gave Gladys Wolfe a note in the sum of $20,000 as payment therefor, and the stock was placed in the bank with the note attached as security. When said note became due the defendant O. O. Owens refused to pay the same and suit was instituted againt the defendant O. O. Owens on said note. After much negotiation the defendant Owens agreed to pay all claims outstanding against the Wolfe estate provided the same did not amount to more than $6,300. After this compromise and settlement was made the sum of $6,300 was deposited to the credit of Gladys Wolfe, administratrix of the estate of W. C. Wolfe, deceased, in the Southwestern National Bank of Oklahoma City, Okla., and the said defendant O. O. Owens, acting through the defendant Solon W. Smith, proceeded to purchase all outstanding claims at 50 cents on the dollar, and such claims were thereafter presented to the said Gladys Wolfe, administratrix, and paid out of said sum of $6,300, same being paid at the rate of 100 cents on the dollar. The referee further found that some of such claims had not been properly filed and some of such claims were not filed within the time provided by law. The referee further found that the defendant Smith was attorney for the estate of W. C. Wolfe, deceased, and that the reason given by him for the payment of such claims was that he knew them to be just obligations of such estate and that the claimants had been assured by the administratrix that such claims would be paid and that thereby the claimants had been led into resting upon their claims and lost their right to present such claims in a legal manner, and that as a matter of morality the defendant Solon W. Smith believed the said claims should be paid. The referee further found that some of such claims were arbitrarily antedated so as to bring them within the four months period provided by the Probate Code. This transaction enabled the defendant Owens to secure a large block of stock in said company for a very small consideration.

The eighth assignment of error relied on by defendants, plaintiffs in error, is that the court erred in its final decree appointing a

receiver for the defendant Riverside Oil & Refining Company. In considering this assignment of error it will be necessary to consider the entire case, manner and means by which Owens and his associates acquired the control of said company, and the manner and means in which said control was exercised.

The referee found that the defendants Solon W. Smith and O. O. Owens had issued and caused to be issued large blocks of the stock of said company as gifts and bonuses without consideration and without authority of law. That the defendant Owens while in charge of the company's business so intermingled money belonging to the company with that of his own that it was difficult to ascertain just how much money or property the defendant company had on hand. The referee further found that the defendant Owens while in charge of the bookkeeping offices of said company and managing the same practically as his own, he spent large sums of money belonging to said company in the development of property that belonged to the defendant Owens, and that defendant Owens spent large sums of money in drilling for oil on what is known as the Jackson Scott lease, which was the property of the defendant Owens, and that after said well proved dry holes and of no value he attempted to assign said lease to the defendant company, and thereby ratify his said acts in so spending the company's money, to the detriment and injury of plaintiffs herein, minority stockholders.

The rule is laid down in Pomeroy's Equity Jurisprudence, volume 4, section 1541, as follows:

"Cases are to be found which assert that courts of equity, by virtue of their general equitable jurisdiction, will not appoint a receiver of a corporation, and assume control and management of its affairs, at the suit of a stockholder alleging fraud, mismanagement, and collusion on the part of the corporate authorities or ultra vires acts of the directors or of the corporation itself. The denial of the power to grant the relief in such cases is based on one or both of two grounds: First, that such relief, in effect, results in a dissolution of the corporation, and the court should refuse to accomplish indirectly that which it had no power to do directly; second, that an injunction, addressed to the specific wrongs charged, affords a sufficient remedy. But notwithstanding many dicta, and the assertions of the older text-books, the current of recent authority appears to be strongly in favor of the inherent power of the court, in a proper case, to displace the management of guilty or negligent officials by the instrumentality of its receiver. It had been frequently pointed out that the ap-

pointment of a receiver in cases of this character does not necessarily result in the dissolution or extinction of the corporation. The property and assets of the corporation, which are being dissipated and fraudulently absorbed, will be preserved and rightfully applied under the supervision of the court, and may be restored to the officers of the corporation when there has been a change of officers, or when it is deemed prudent and safe to restore the property and affairs of the corporation to its duly constituted officers.' "

Our statute provides that a receiver may be appointed by the court where receivers have heretofore been appointed by the usages of courts of equity. Section 518, C. O. S. 1921.

We are fully aware of the reluctance of courts of equity to interfere by receivership in the management of corporations or to take that management from trustees elected by the shareholders. Nor can a court of chancery interfere at the suit of a portion of the shareholders and remove an offending officer, or even enjoin him generally from acting for the corporation, unless this be essential to the protection of the corporate rights; as, for example, where the directors or those who have charge of a corporation convert its assets to their own use and benefit, issue its stock as bonuses and gifts. We can scarcely conceive of a case where it would be more essential than it is here for the protection of corporate rights, and to permit this corporation to continue under the same management would mean that they would continue to convert the assets to their own use and exercise their own pleasure as to the trust imposed upon them. To allow such a proceeding, it seems to us, would shock the conscience of the most indifferent court. In most cases of this character no other adequate remedy exists. The appointment of a receiver is not necessarily a proceeding to dissolve a corporation, nor will it necessarily result in its extinction. The property and assets of the corporation which are being dissipated and fraudulently absorbed will be preserved and rightfully applied under the supervision of the court, and may be restored to the officers of the corporation when there has been a change of officers, or when it is deemed prudent and safe to restore the property and affairs of the corporation to its duly constituted officers. It does not seem necessary to go further in this discussion; the facts of this case will not afford a precedent in the future for any imprudent or unauthorized appointment of a receiver for corporations, or the unwise withdrawal of the business of a corporation from the manage-

ment of its duly elected and lawfully acting trustees. We are, therefore, of the opinion that the court did not err in the appointment of a receiver for the defendant corporation. Dill v. Johnston, 72 Okla. 149, 179 Pac. 608; Fougeray v. Cord et al. (N. J. Eq.) 24 Atl. 499; Bentley et al. v. Zelma Oil Co. et al., 76 Okla. 116, 184 Pac. 131; Brent et al. v. Brister Sawmill Co., 43 L. R. A. (N. S.) 720; Pike Co. v. Hammons, 129 Ind. 368, 27 N. E. 487; Order of Iron Hall v. Baker (Ind. Sup.) 33 N. E. 1128.

The ninth assignment of error complains of the judgment and decree of the court in which the court rendered a judgment against the defendant company in the sum of $5,000 as attorney fee. The judgment rendered in this case is beneficial to all stockholders and the defendant company. See Forrest v. Nebraska Hardware Company (Neb.) 137 N. W. 839; 14 Corpus Juris, section 1346, and cases cited. It is a well-settled rule that the expense of correcting the management and affairs of a corporation by a suit in court may be chargeable against the defendant corporation. We, therefore, conclude that the court did not err in rendering judgment for said attorney fee.

We have carefully examined the findings of fact of the referee, and conclude that the same are not against the clear weight of the evidence, and the approval by the trial court of said findings of fact and conclusions of law was not error, and the same is affirmed.

NICHOLSON, C. J., and MASON, LESTER, and RILEY, JJ., concur.