## DILL v. JOHNSTON.

No. 7884—Opinion Filed March 11, 1919.

(179 Pac. 608.)

(Syllabus.)

### 1. Corporations—Division of Assets—Right of Minority Stockholder.

A court of equity has power at a suit of the minority of the stockholders of a corporation to order a dividend of its assets, where the safety of the interest of the minority of stockholders requires it.

### 2. Same.

In determining whether to exercise such a power, in a particular case, the object of the corporation, and the satisfaction of its affairs must be taken into consideration.

### 3. Same.

Where a majority of the stockholders have combined to so manage the business of the corporation as to divert all the profits of the enterprise from their legitimate destination, and to appropriate them to their own use, and have in part executed their plan, and the circumstances render any change in the personnel of the management impracticable, a proper case has arisen for the intervention of the court to make a division of the assets.

### 4. Same—Judgment.

Where a corporation has ceased to do business for a period of several years and the stock of the corporation is owned exclusively by two persons and the majority stockholder has charge of all the books, property, and affairs of the corporation, and has converted all of the assets to his own private use, and the company owns no assets other than that which has been converted by the majority stockholder, and converted into cash, the minority stockholder may maintain a suit against the majority stockholder where the corporation is made a party defendant, and, when the court finds that all of the property has been disposed of by the majority stockholder, the court may render judgment in favor of the minority stockholder and against the majority stockholder for his aliquot part of the funds due the corporation.

### 5. Same — Suit by Minority Stockholder — Receiver.

In a suit by a minority stockholder against a majority stockholder of a corporation where it appears from the finding of the court that the corporation has no property but has permitted the majority stockholder to convert the same to his own use and benefit, the court may render judgment direct in favor of the minority stockholder, and against the majority stockholder for his aliquot part without the appointment of a receiver or without rendering judgment in favor of the corporation and against the majority stockholder.

### 6. Same—Diversion by Majority Stockholder—Evidence.

The evidence in this case has been examined and found sufficient to sustain the findings of the referee and the judgment of the court thereon.

Error from District Court Okfuskee County: George C. Crump, Judge.

Action by Willard Johnston against W. H. Dill and the Citizens' Bank & Trust Company of Okemah. Judgment for plaintiff, and defendant Dill brings error. Affirmed.

B. B. Blakeney and J. H. Maxey, for plaintiff in error.

Ames, Chambers, Lowe & Richardson, Scothorn, Rittenhouse & McRill, and Wells & Lee, for defendants in error.

McNEILL, J. This is an action commenced in the district court of Okfuskee county by Willard Johnston as plaintiff, and W. H. Dill and the Citizens' Bank & Trust Company of Okemah as defendants. The substance of the amended petition was that the Citizens' Bank & Trust Company, a corporation, which was organized prior to statehood, and on or about the 12th day of February, 1908, settled and discharged all of its debts and liabilities and ceased to do business either as a banking concern or as a trust company; that, after paying and settling all of its debts and liabilities, it was the owner of a large amount of property consisting of money, negotiable instruments, real estate, and leases on real estate of the value of more than $50,000; that the defendant Dill was president of the corporation and owner of all the share of the capital stock except that owned by plaintiff, Willard Johnston: that since the 12th day of February, 1908, W. H. Dill had full and absolute charge and control of the records, books, deeds, titles, to the real estate and the property of the corporation; that he has sold, transferred, and conveyed all of the real estate and appropriated all of the money, notes, and credits to his own private use and credit; that W. H. Dill is the only officer of said corporation and in charge of the property. Demurrers were filed to the petition and overruled. Thereafter a general denial was filed by the Citizens' Bank & Trust Company and also by W. H. Dill. The cause was submitted to a referee, who made his findings of fact, and, among the findings, found in substance as follows:

(5) That Willard Johnston was the owner of $4,000 worth of stock and W. H. Dill was the owner of $8,500 worth of stock at the time of the trial, being the only stockholders of said corporation.

(20) That Dill had disposed of and appropriated to his own private use all of the assets of the corporation in the sum of $25,475. That Johnston's pro rata proportion of said amount would be $8,152.

(21) That it would have been useless to have requested or demanded the officers of the corporation to maintain such suit.

(23) That the corporation ceased to do a banking business on February 12, 1908, and after January 13, 1910, had only been disposing of its assets and was not a going concern and had not been long prior to filing suit.

(24) That the corporation was the owner

of no property at the time of filing suit, but that all of its assets had been disposed of by W. H. Dill and converted to his own private use.

The report of the referee was modified by the court and judgment rendered against the defendant W. H. Dill in favor of the plaintiff in the sum of $6,729, being the plaintiff's proportionate part of the property of the corporation that had been appropriated by W. H. Dill; said amount being the pro rata portion according to the amount of stock that the plaintiff's stock bears to the whole stock.

From this judgment, the defendant appealed, and his grounds for reversing the same present the following questions:

"Can a stockholder bring an action against the officers and directors of the corporation and recover in his own behalf from injuries done to the property of the corporation?"

The general rule is that he cannot, but there are exceptions to the general rule. It is plaintiff in error's or defendant's contention that the petition stated a cause of action, and the court might have rendered judgment in favor of the corporation and against W. H. Dill in a proper action, but had no right or authority to render judgment for plaintiff, which in effect divided the assets of the corporation and gave to the plaintiff his aliquot part of the same.

This question has been before this court in previous cases, but never in the exact form of the present case; but the decisions of the court are almost decisive with the case at bar.

In the case of Exchange Bank of Wewoka v. Bailey, 29 Okla. 246, 116 Pac. 812, 39 L. R. A. (N. S.) 1032:

"The principal contention of defendants is that a court of equity, in the absence of statutory authority, has no jurisdiction over corporations for the purpose of decreeing their dissolution and the distribution of the assets of the corporation among the stockholders at the suit of one or more of the stockholders; and that, since one of the reliefs for which plaintiff in this proceeding asks in his prayer is that the corporation be dissolved and its assets distributed among its stockholders, after paying all debts of the corporation, the trial court is without jurisdiction. This contention, in so far as it applies solely to proceedings to dissolve corporations and to wind up their affairs, finds support in section 119, Pomeroy's Eq. Jur., in the following language:

" 'It is well settled, with scarcely a dissenting voice, that, in the absence of express statutory authority, a court of equity has no power to dissolve a corporation, or to wind up its affairs and sequestrate its property.'

"This statement from the text is supported as a general rule of law by almost all the decided cases, but the eminent author states in the same section that:

" 'A few exceptions have, however, been admitted to this rule; as, where the corporation had utterly failed of its purpose because of fraudulent mismanagement and misappropriation of the funds by the president and manager who owned a majority of its stock, a receiver was appointed to wind up its affairs at the suit of a minority stockholder. * * *'

"Some cases hold that a court of equity may dissolve a corporation, but only under extreme circumstances. It is unnecessary, however, to decide in this case under what circumstances, if any, a court of equity may decree a dissolution of a corporation and wind up its affairs, for, while this is one of the reliefs prayed for by plaintiff's petition, it is not the only relief asked, and the facts alleged clearly, we think, entitle plaintiff to other relief which a court of equity may administer; and if we assume, without deciding, that the trial court was without jurisdiction to dissolve this corporation and to wind up its affairs, there being other relief which it can afford to plaintiff upon the petition, the cause should not be dismissed."

This court, in the case of Union State Bank of Shawnee v. Mueller, 68 Okla. 152, 172 Pac. 650, being the leading case of this state, speaking through Justice Hardy, said:

"Where the property of a corporation is being mismanaged or is in danger of being lost to the stockholders through mismanagement collusion, or fraud of its officers, and directors, a court of equity has the inherent power to appoint a receiver for the property of such corporation, and to require its officers to make an accounting upon petition of the minority stockholders therefor."

The Supreme Court of New Jersey, in the case of Fougeray v. Cord, 50 N. J. Eq. 185, 24 Atl. 499, one of the leading cases on this question, speaking through Justice Pitney, said:

"Where the offending officers constitute, as here, a controlling majority of the stockholders, the action must necessarily be brought by the individual stockholder or stockholders who finds himself or themselves in the minority. Cook, Stock & S. § 645; Hawes v. Oakland, 104 U. S. 450 [26 L. Ed. 827]. It is the peculiar province of this court, not only to right wrongs already committed, but to protect property from future injury and waste by withdrawing it from the

reach of danger. In the case of a wilful breach of trust, it not only compels the guilty trustee to restore the trust property, but removes it from the possession and control of the custodian who has proved untrustworthy. There is nothing in the character of a trading corporation to prevent the application of this remedy. It is, after all, as between the stockholders, nothing more than a trading copartnership. Mor. Corp. § 3. In Robinson v. Smith, 3 Paige [N. Y.] 222 [24 Am. Dec. 212], Chancellor Walworth, at page 232, says that 'joint-stock corporations are mere partnerships, except in form; the directors are the trustees or managing partners, and the stockholders are the cestuis que trustent, and have a joint interest in all the property and effects of the corporation.' And in Pratt v. Pratt [Read & Co.] 33 Conn. 446, Hinman, Ch. J., at page 456, says: 'Joint-stock companies, in modern times, are nothing but commercial partnerships, which have taken the form of corporations for the greater facility of transacting business, and to prevent a dissolution of the concern by these numerous events which are so liable to work a dissolution in a partnership composed of a great number of individuals.' In the case in hand it is impossible to leave the complainant's property interests in the control of the corporation, without leaving it in the control of the two defendants Cord and Korb, and they have proved themselves wholly untrustworthy, so that, if this were a case of partnership, the court would dissolve it at once and divide the property. The exigency of the case demands the same remedy here, as far as it is necessary to ascertain and give complainant his share."

The Supreme Court of Michigan, in the case of Miner v. Belle Isle Ice Co., 93 Mich. 97, 53 N. W. 218, 17 L. R. A. 412, said:

"The present case furnishes an instance of gross abuse of trust. Must the cestui que trust be committed to the domination of a trustee who has for seven years continued to violate the trust?. The law requires of the majority the utmost good faith in the control and management of the corporation as to the minority. It is the essence of this trust that it shall be so managed as to produce for each stockholder the best possible return for his investment. The trustee has so far absorbed all returns. What is the outlook for the future? This court, in view of the past, can give no assurances. It can make no order that can prevent some other method of bleeding this corporation, if it is allowed to continue. If Lorman be removed, who shall take his place? He has the absolute power to determine. Once deposed, he may elect a dummy to fill his place. There are practically but three persons concerned, Miner, Lorman, and Lorrissa Carpenter, and she has for seven years, in fraud of complainant's rights, been paid a dividend to secure her acquies-

cence. Who has any right to complain if ample and complete justice is awarded to Miner? Who should be permitted to stand between him and an adequate remedy? This corporation has utterly failed of its purpose, not because of matters beyond its control, but because of fraudulent mismanagement and misappropriation of its funds. Complainant has a right to insist that it shall not continue as a cloak for a fraud upon him, and shall not longer retain his capital to be used for the sole advantage of the owner of the majority of stock, and a court of equity will not so far tolerate such a manifest violation of the rules of natural justice as to deny him the relief to which his situation entitles him. I think a court of equity, under the circumstances of this case, in the exercise of its general equity jurisdiction, had the power to grant to this complainant ample relief, even to the dissolution of the trust relations. Complainant is therefore entitled to the relief prayed."

The Supreme Court of Illinois, in the case of Brown et al. v. De Young et al., 167 Ill. 549, 47 N. E. 863, said:

"In a suit by the minority stockholders of a corporation against the corporation and the former secretary and treasurer thereof to compel the restoration to the corporation of moneys received by such officer in excess of the salary to which he was entitled, where the corporation denied that it was entitled to a return of such moneys and, where it appeared that one of the complainants was debarred from any relief by reason of his acquiescence in such misappropriation, equity will treat the excessive salary as in the nature of a fraud out of which a dividend should be declared, and give to the innocent shareholders the proportion thereof which their stock bears to the whole stock, leaving the balance in the hands of him to whom it was appropriated by his cowrongdoers."

The Supreme Court of Rhode Island, in the case of Eaton v. Robinson, 19 R. I. 146, 32 Atl. 339, 29 L. R. A. 100, said:

"Where directors of a corporation wrongfully appropriated money and salaries to themselves, the court may, in an action by the minority stockholders against the majority and the corporation, when the prayer is ample, decree direct payment by the majority stockholders who were directors, to the minority of their aliquot share of the amount found due the corporation."

By a great weight of authorities, we think the following rule has been upheld, to wit:

"A court of equity can, at the instance of minority stockholders on a showing of maladministration by the officers supported by the minority, appoint a receiver for a going concern and solvent corporation, to take charge

of its business, and, if it be shown to be necessary, to wind up its business." Brent v. B. E. Brister Sawmill Co., 103 Miss. 876, 60 South. 1018, 43 L. R. A. (N. S.) 720, Ann. Cas. 1915B, 576; Ross v. American Banana Co., 150 Ala. 268, 43 South. 817; Green v. National Advertising & Amusement Co., 137 Minn. 65, 162 N. W. 1056, L. R. A. 1917E, 784; Thwing v. McDonald, 134 Minn. 148, 156 N. W. 780; 158 N. W. 820, 159 N. W. 564, Ann. Cas. 1918E, 420.

The Supreme Court of Idaho, in the case of Gibbs v. Morgan, 9 Idaho, 100, 72 Pac. 733, said:

"As far as possible, courts of equity should adapt their practice to the existing conditions of the business world, and apply their jurisdiction to the changed conditions and cases arising thereunder, and should not too strictly adhere to forms and rules established under different circumstances, and decline to administer justice and enforce rights for which there is no other remedy."

And again in the case of Baillie v. Columbia Gold Mining Co., 86 Ore. 19, 166 Pac. 965, 970, said:

"We have found a few cases in which stockholders have sued on behalf of themselves and all others similarly situated for the redress of wrongs done the corporation, in which the court has in effect directed a dividend, by requiring the unfaithful majority to pay the minority its aliquot share of moneys taken from the corporate treasury. Brown v. DeYoung, 167 Ill. 549, 47 N. E. 863, 866; Eaton v. Robinson, 19 R. I. 146, 31 Atl. 1058, 32 Atl. 339, 29 L. R. A. 100; Fougeray v. Cord, 50 N. J. Eq. 185, 198-200, 24 Atl. 499; Davis v. Gemmell, 73 Md. 530, 534, 21 Atl. 712; Crichton v. Webb Co., 113 La. 167, 183, 36 South. 926, 67 L. R. A. 76, 104 Am. St. Rep. 500. The doctrine of these cases is applicable only where the court can say that the powers of the directors will be abused to the injury of the complaining stockholders and that the circumstances clearly call for the declaration of a dividend. In the above cases, the relief granted was incidental to a recovery in the right of the corporation at the suit of a stockholder."

From reviewing the above cases and the reasoning therefrom, and applying the principles to the findings of the referee that were approved by the trial court, we think the same amply supports a case, upholding the theory: First, that this corporation at the time of filing this suit had utterly failed of its purpose, not because of matters beyond its control, but because of fraudulent mismanagement and misappropriation of its funds. Second, that this is such a case that a court of equity, through its inherent power, will mold its decree to grant relief to the minority stockholder, and give him such relief as disclosed by the evidence will protect his rights and property.

Plaintiff complains that this suit should be in the name of the corporation and permit the defendant to account to the corporation. The evidence discloses that the defendant Dill did or attempted to show that all of this property had been accounted for to the corporation, but the court and referee found otherwise. To apply the rule of the defendant to an action of this kind in our judgment would be to nullify the decision of the court. The result would be, the court, after deciding that Mr. Dill had appropriated over $20,000 of the corporations' property, and all the property of the corporation had to his own use and benefit, it would then say to Mr. Dill, now you, as president and manager of this corporation, proceed at once to collect this from yourself. Could it be said that would grant the plaintiff in this case any relief? It becomes more apparent that this would still be fruitless, for the reason the attorney representing the corporation also represented Mr. Dill and on behalf of the corporation filed a motion asking that the finding of the referee be set aside, and asked that the judgment be set aside. To permit such a procedure, the ultimate effect would be to grant the plaintiff no relief. He would be in the same position that he had been in since the year 1908. He had invested his money in this corporation, received no dividends, and Mr. Dill, according to the finding of the referee, has converted all the property to his own private use. If there was property except what had been turned into cash, and had not been appropriated by the defendant Dill to his own use, it might have been necessary, as has often been done, to appoint a receiver to take charge of the assets and to wind up the affairs of the corporation and to distribute the same; but there is no showing of any property that the corporation has, but on the contrary the court finds that it had none.

All a receiver could do in the case at bar under the judgment would be to collect from Mr. Dill over $20,000 and pay Mr. Johnson his proportionate part and return to Mr. Dill the balance. This would be a useless and unnecessary expense and procedure, and the same result would be reached by directing Mr. Dill to account to the plaintiff herein direct for his proportionate part of the money that Mr. Dill owes the corporation.

The petition alleges and the findings of the referee approved by the court are such that entitle the plaintiff to relief in a court of

equity, and the court granted him the only proper relief that could have been given in a case of this kind and character.

The second assignment of error argued is an objection to the findings of fact contained in findings Nos. 9 and 11. These two findings deal with a deposit that had been made in the name of the Citizens' Bank & Trust Company in the Citizens' State Bank, and, dealing with this, the court in finding No. 9 states as follows:

"I further find that all this money deposited to the credit of stockholders' account in the Citizens' State Bank, which said money belonged to the stockholders of the Citizens' Bank & Trust Company, was checked out and disposed of at various times from February 12, 1908, to the 13th day of January, 1910. The evidence is conflicting as to who drew the checks against this fund, but admittedly either W. H. Dill, president of the old corporation and the Citizens' State Bank and in active charge thereof, or M. B. Flesher, cashier. I find that M. B. Flesher was a subordinate of W. H. Dill, and that, when he quit the service of the Citizens' State Bank, W. H. Dill remained in active charge as its president. No satisfactory proof has been offered as to what this $10,631.45 was spent for. No vouchers of any kind or character were introduced in evidence, drawn by any one by whom this money was spent, which admittedly belonged to the stockholders of the Citizens' State Bank & Trust Company. Some of the vouchers drawn against this fund were exhibited by counsel for W. H. Dill and marked as exhibits by the stenographer, but counsel for W. H. Dill saw fit not to introduce them as evidence and they are not before the referee. There has been made no satisfactory explanation of what became of the $10,631.45, or rather there has been no proof offered, whatever, that this money was spent, or any part of it, for the benefit of the stockholders to whom it belonged."

The evidence of Flesher and Dill was conflicting as to who had drawn out this money or what it had been used for. The defendant further claims and says that there was one item of $200, which was admitted drawn out of the account by Mr. Flesher to pay expenses of defending certain suits and that he should be allowed for this particular item.

In finding No. 18, the referee allowed Mr. Dill $2,000 for money expended in protecting certain titles. The record on page 920 Mr. Dill's testimony is as follows:

"The following amount was $1,515 less $200 was paid by the stockholders' account. Then there was $500 advanced as court costs; something like $1,800 I was out myself."

So it would appear from Mr. Dill's own testimony that he had only been out $1,800, and that the referee had allowed him $2,000, so it would be immaterial whether the allowance was made in finding No. 9 or finding No. 18, so long as he received credit therefor. We hold the evidence was sufficient to support this finding.

The plaintiff next complains of finding No. 14, and as grounds states: There was no evidence to base this finding upon. The referee did find that certain land was of the total value of $17,300 and specified the particular pieces of land. The plaintiff states there was no evidence to show that this land had not been disposed of, and nothing to show that the trust company did not still own it at the time of the trial; but with this we cannot agree. The plaintiff in error does not set out any evidence, and the record does not disclose any evidence, as to what portion of this land the trust company still owns. The evidence was very long, and Dill admits that at least part of the land had been sold, and, while it is true, he stated that all the money had been deposited in the stockholder's account; but the referee found different from this, and we think the evidence is sufficient to support the finding of the referee upon this question.

The plaintiff then complains of finding No. 18. The evidence upon this question was very long and conflicting in many respects, and, among other things in said finding, the referee stated as follows:

"I find as a fact that the Citizens' Bank & Trust Company in reality on February 12, 1908, was the owner of approximately 7,000 acres of inherited Indian land bought in tracts of 80 and 160 costing approximately $5 per each 160 acres. Many pages of testimony on both sides of this controversy has been placed in this record; but, in the absence of a request of either side to deal with this subject tract at a time, I shall deal with it in this report as a whole. * * *

"I find as a fact that many quitclaim deeds were made, but in most instances the said land had previously been quitclaimed by Dill in the name of the corporation and others holding same for the benefit of the corporation to other parties. I further find that after the Act of Congress of May 27, 1908, that W. H. Dill individually had many of these titles approved by the county court of Okfuskee county, and that he individually paid the balance of the purchase price for said land thereby perfecting the

attle in himself, which had previously belonged to the corporation, of which he was an officer and manager." * * *

"I further find in this connection that the entire 7,000 acres of what is termed Indian inherited lands involved in this action, exclusive of freeman land, was of the value of $5,000, and that the defendant in disposing of said land received fully the sum of $5,000 therefor, and should account to the corporation, of which he was president, for said sum. I further find in this connection that the defendant Dill individually spent $2,000, endeavoring to protect and make perfect the titles dealt with herein, for which he should be allowed credit, leaving the sum of $3,000 which I find as a fact that he is indebted to the corporation, by reason of having appropriated said lands, and not having accounted to the corporation, or to the plaintiff, for the proceeds therefor. Applying the proportion heretofore applied, I find that W. H. Dill is indebted to the plaintiff, Willard Johnston, in the sum of $960, arising from the disposition of said lands, termed inherited lands, exclusive of lands dealt with in findings of fact No. 14."

We think there was sufficient evidence upon which to base said finding, and we cannot say that the same was contrary to the evidence. Some deeds were introduced to show the consideration of $1, and witnesses were introduced to show that more had been paid and that no complete record had been kept of said transaction nor as to what became of the money. We think, upon examination of the record, the evidence is sufficient to support the finding of the referee, and the trial court did not commit error in approving the same.

It therefore follows that the judgment of the lower court should be affirmed.

All the Justices concur.