[No. 8302–3–I.   Division One.   April 20, 1981.]

WALDEN INVESTMENT GROUP, ET AL, *Appellants,* v. PIER 67, INC., ET AL, *Respondents.*

*George, Hull & Porter, P.S.,* and *T. Dennis George,* for appellants.

*Kelly Corr,* for respondents.

JAMES, C.J.—Plaintiff, Walden Investment Group, appeals the trial judge's grant of defendant Pier 67, Inc.'s motion for summary judgment. We affirm.

Walden brought this action seeking a declaratory judgment to establish the method of electing directors in Pier 67, Inc. Walden contends that Pier 67's articles of incorporation should be construed as requiring a single election of directors.

Pier 67, Inc., is a Washington corporation. It presently has issued an outstanding 12,000 shares of class A stock and 308 shares of class B stock. The articles of incorporation provide that holders of class B stock are entitled to enhanced voting rights. The pertinent provision states:

The "Class B" shareholders of the Corporation shall be entitled to a 25% position in the Corporation. This position shall be entitled [*sic*] them by virtue of their stock ownership, to 25% of all dividends declared by the Corpoartion [*sic*], 25% of all voting rights in the Corporation, and 25% of the net assets of the Corporation upon dissolution or liquidation. *"Class B" shareholders shall at all times be entitled to elect at least 25% of the*

*directors of the Corporation.* In the event that a lesser amount of "Class B" shares are subscribed, the percentage of participation (25%) as specified shall be reduced ratably.

(Italics ours.) Article 5(c), amended articles of incorporation of Pier 67, Inc. Article 5 authorizes the issuance of 375 shares of class B common stock. Because only 308 shares of class B stock are outstanding, class B shareholders' percentage of participation is reduced to 20.533 percent pursuant to the last sentence in article 5(c).

Pier 67, Inc., was formed in 1960 and held no contested election until 1977. The articles of incorporation were amended to provide for class B stock in 1962 to attract additional equity capital. The original participants in the corporation no longer own shares. The new majority shareholders acquired their interest in 1977 and held a special shareholders' meeting to remove the corporation's incumbent directors and elect new directors. The majority shareholders own slightly more than 6,000 shares of class A stock and 248 shares of class B stock. At the special election in 1977, the directors were elected in two slates: five directors elected by class A shareholders and two directors elected by class B shareholders.

Walden's predecessor in interest objected to this method of election and argued that article 5(c) merely required that class B shareholders were entitled to weighted voting. Walden subsequently acquired its interest in the corporation and now owns slightly more than 4,000 shares of class A stock and 60 shares of class B stock. Under Pier 67's interpretation that article 5(c) requires separate slates of directors, Walden is unable to elect a director in the class B election. It is, however, able to elect two directors by virtue of its class A holdings.

Walden's first contention is that article 5(c) should be interpreted as mandating a single election of directors. We do not agree.

The articles of incorporation represent a contract

between the corporation and its shareholders and should be interpreted in accordance with accepted rules of contract construction. *See In re Olympic Nat'l Agencies, Inc.,* 74 Wn.2d 1, 442 P.2d 246 (1968). Where the parties' interpretation of a contract differs,

> Determination of the intent of the contracting parties is to be accomplished by viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties.

*Stender v. Twin City Foods, Inc.,* 82 Wn.2d 250, 254, 510 P.2d 221 (1973). The trial judge, after considering the above factors, correctly sustained Pier 67's interpretation of article 5(c).

Walden relies upon the language of article 5(c) requiring that class B shareholders "be entitled to elect at least 25% of the directors . . ." A more decisive phrase in the sentence is "at all times." Walden's interpretation of the provision could result, in certain circumstances, in class B shareholders being without representation on the board of directors. The "at all times" language, however, effectively guarantees class B shareholders representation on the board. Additionally, Pier 67 points out that section (c) also grants class B shareholders "25% of all voting rights in the Corporation." Walden's interpretation not only fails to ensure class B shareholders representation on the board, but also renders the sentence concerning directors superfluous. Finally, in accord with the rule of construction in *Stender,* we believe Pier 67's interpretation of the articles of incorporation is the more reasonable.

Walden next contends that conducting separate director elections for class B and class A shareholders violates class B shareholders' cumulative voting rights. We do not agree. This case does not involve "classified directors" in

the traditional sense.[1] Rather, Walden questions a corporation's ability to provide voting rights and preferences to distinct classes of shares. Both the prior corporation statute, RCW 23.01.130(1) (repealed effective July 1, 1967), and the current corporation statute, RCW 23A.08.120, explicitly authorize the creation of classes of shares with differing rights, voting powers, preferences, and restrictions. *See* Kummert, *The Financial Provisions of the New Washington Business Corporation Act,* 41 Wash. L. Rev. 207, 217–20 (1966). Because under Pier 67's current method of electing directors class B shareholders are entitled to cumulate their votes, the fact that article 5(c) mandates separate elections does not violate the corporation's shareholders' cumulative voting rights.

Affirmed.

ANDERSEN and CORBETT, JJ., concur.

---

[1]We believe the term "classified directors" properly refers to corporate arrangements staggering the terms of directors. *See generally* 5 W. Fletcher, *Private Corporations* § 2048.2 (1976). Because this case does not involve such a system, we need not discuss whether classified directorships violate a shareholder's right to cumulative voting. *Compare Wolfson v. Avery,* 6 Ill. 2d 78, 126 N.E.2d 701 (1955) *with Humphrys v. Winous Co.,* 165 Ohio St. 45, 133 N.E.2d 780 (1956). We note, however, that the present statute authorizes such classified directorships. RCW 23A.08.380.