**Leighton PHILLIPS, Sr.,
Plaintiff-Appellant,**

v.

**NATIONAL TRAPPERS ASSOCIATION,
an Iowa Nonprofit Corporation, and
Tom Krause, Defendants-Appellees.**

No. 86–720.

Court of Appeals of Iowa.

April 22, 1987.

Brian J. Kane and David A. Tank, of O'Connor & Thomas, P.C., Dubuque, for plaintiff-appellant.

James D. McCarragher, of Meardon, Sueppel, Downer & Hayes, Iowa City, for defendant-appellee National Trappers Ass'n.

James Martinek, of Neely & Martinek, and then Charles Poches, of Ft. Pierre, S.D., for defendant-appellee Krause.

Considered by OXBERGER, C.J., and HAYDEN and SACKETT, JJ.

SACKETT, Judge.

Defendant National Trappers Association (NTA) is a nonprofit corporation incorporated in 1969 by NTA founder and then president Gerald Walkup under Iowa Code chapter 504A. Article VIII of NTA's Articles of Incorporation provides a method for amending NTA's articles of incorporation and bylaws. Article VIII states:

> The Articles of Incorporation and/or the By-Laws may be amended at any national convention by a majority vote of the members present provided that the proposed amendment or amendments shall have been submitted in writing to the members of the Board of Directors by mailing said proposed amendment or amendments to the members of the Board of Directors at least sixty days prior to the date of the National Convention; and that the Board of Directors mail such proposed amendment or amendments to the membership at least thirty days prior to the date of said National Convention.

Pursuant to Article VIII, several bylaws amendments were approved by the NTA general membership at its 1978 annual convention. Article IV, section 2 of the amended bylaws provides:

## BUSINESS BETWEEN CONVENTIONS

(a) An amendment to the By-Laws which must be enacted between conventions may be put into full force and effect in the following manner. It shall first be submitted to the full Board of Directors for approval by mail. Following approval by the Board it shall then be submitted to the membership by form letter or by printing in "Voice of the Trapper." Members shall then vote on the matter by mail.

In 1982 and 1984, two amendments to the NTA bylaws were approved by the procedure set out in Article IV, Section 2. Those amendments limited the number of terms a person could serve as president and eliminated the editorship of Voice of the Trapper from the president's duties and powers. As a result of those amendments, NTA President Donald Hoyt became ineligible to continue serving in that position and stepped down.

Plaintiff Leighton Phillips filed an action for declaratory judgment, asking the trial court to declare the 1982 and 1984 bylaws amendments null and void because they were not adopted pursuant to Article VIII of NTA's Articles of Incorporation. Plaintiff argued that Article VIII of NTA's Articles of Incorporation sets forth *the only* method by which NTA's articles and bylaws can be amended. Plaintiff contended that even though Article IV, Section 2 was adopted pursuant to Article VIII, it still must fall because it establishes an amendment process which is inconsistent with Article VIII. As such, plaintiff argued the 1982 and 1984 amendments are null and void because they were adopted pursuant to the invalid Article IV, Section 2. NTA countered that Article VIII is a permissive rather than exclusive method of amending its bylaws. NTA contended Article IV, Section 2 provides a second valid method for amending its bylaws and is not inconsistent with Article VIII. Therefore, NTA asserted the 1982 and 1984 bylaws amendments adopted pursuant to Article IV, Section 2 are not null and void. After the action was tried in equity, the trial court entered judgment that the 1982 and 1984 bylaws were valid and properly adopted. This appeal followed.

Iowa Code § 504A.4(12) (1985) provides that each nonprofit corporation, unless otherwise stated in its articles of incorporation, shall have power:

To make and *alter bylaws, not inconsistent with its articles of incorporation* or with the laws of this state, for the administration and regulation of the affairs of the corporation. (Emphasis added.)

Iowa Code § 504A.12 (1985) provides:

The initial bylaws of a corporation shall be adopted by the board of directors. The power to alter, amend or repeal the bylaws or adopt new bylaws shall be vested in the board of directors unless otherwise provided in the articles of incorporation. *Bylaws may contain any provisions* for the regulation and management of the affairs of a corporation *not inconsistent with* law or *the articles of incorporation.* (Emphasis added.)

Corporate articles and bylaws are construed according to the general rules governing contracts. 18 Am.Jur.2d *Corporations* § 75, at 889 (1985); 18A Am.Jur.2d *Corporations* § 323, at 234 (1985). *See Walden Investment Group v. Pier, 67, Inc.*, 29 Wash.App. 28, 627 P.2d 129 (1981); *Judah v. Delaware Trust Co.*, 378 A.2d 624 (Del.1977). They must be construed reasonably in accord with common and approved usage of the language employed. 18 Am.Jur.2d *Corporations* § 75, at 889 (1985). Ambiguous provisions must be construed in harmony with the intent of the governing regulations taken as a whole. 18A Am.Jur.2d *Corporations* § 323, at 235 (1985). If the meaning of a word is not plain or where the term has no fixed meaning as a matter of law, the court will consider the history and surrounding circumstances to determine the intent of the parties. 18 Am.Jur.2d *Corporations* § 323, at 235 (1985), *See Missouri State Teachers Assn. v. St. Louis Teachers Assn.*, 622 S.W.2d 745 (Mo.App.1981). In that case the court held the question of whether language in the articles of incorporation was a mandatory directive regarding membership was one of interpretation since the meaning of the language was not plain. *Id.* at 749. Thus, the court found that interpret-

ing the language required further inquiry into surrounding circumstances. *Id.*

In the instant case, determining whether Article VIII establishes the exclusive method for amending NTA's bylaws rests on interpretation of the word "may" in Article VIII.· We agree with the trial court that the use of the word "may" lends Article VIII to a number of interpretations and makes the meaning of the article unclear:

> Generally speaking, "may" is an auxiliary verb. *It is an elastic word of most common use, having a wide scope of meaning or having various meanings, the particular meaning often being dependent on the context or the connection in which it is used. As a general rule, it is construed in its ordinary and usual signification where no intention to the contrary is shown.*
>
> As an auxiliary verb, "may" is used for the purpose of qualifying the meaning of another verb by expressing ability, competency, contingency, liability, possibility, probability, or potentiality.
>
> As Permissive or mandatory. The very "may" may be, and usually is, employed as implying permissive or discretional, and not mandatory, action or conduct; or it may be employed as implying imperative or mandatory action or conduct. More specifically, "may" has been construed sometimes to mean "shall," and sometimes not to mean "shall," sometimes to mean "must," and sometimes not to mean "must;" sometimes to mean "must" or "shall." *Whether the word is to be construed as mandatory or as permissive is to be determined in each case from the apparent intention as gathered from the context, considering the whole instrument in which it is used; and it is always construed in a permissive sense unless necessary to give effect to the intent in which it is used.*

57 C.J.S. *May* at 456–57 (1948). Similarly, the Iowa courts have not given a fixed meaning to the word "may." In *Schultz v. Board of Adjustment of Pottawattamie County,* 258 Iowa 804, 139 N.W.2d 448, 451–52 (1966), although the court acknowledged the word "may" normally implies permissive action or conduct, nevertheless the court held that "may" must be construed as mandatory in the context of the ordinance in question. *But see John Deere Waterloo Tractor Works of Deere & Co. v. Derifield,* 252 Iowa 1389, 1392, 110 N.W.2d 560, 562 (1961) (Court holds the word "may" implies permissive conduct and mandatory construction will not be given unless such intent plainly appears).

■ Because of the ambiguity of the word "may" in Article VIII, the trial court admitted testimony by NTA founder and sole incorporator, Gerald Walkup, that he intended Article VIII to be permissive in nature and that the bylaws could be amended under other approved procedures. In our de novo review, we determine the trial court properly considered this extrinsic evidence in arriving at the intended meaning of Article VIII. Extrinsic evidence may be admitted in such cases as an aid to interpretation when it sheds light on the situation of the parties, antecedent negotiations, the attendant circumstances and the object the parties were striving to obtain. *Kroblin v. RDR Motels, Inc.,* 347 N.W.2d 430, 433 (Iowa 1984); *M–Z Enterprises v. Hawkeye-Security Insurance Co.,* 318 N.W.2d 408, 412 (Iowa 1982).

■ Walkup was unequivocal that his intent in drafting Article VIII was to make it permissive and not the exclusive method for amending the bylaws. In addition, such interpretation enlarges the rights of NTA members to amend the bylaws and maximizes their voting rights in the organization by permitting more direct participation in the amendment process. *See* 18 Am.Jur.2d *Corporations* § 75, at 888–89 (1985) (Articles of incorporation shall be construed strictly against corporations and in favor of the public).

We therefore affirm the trial court that Article IV, Section 2 of the 1978 amended bylaws of NTA and the 1982 and 1984 amended bylaws of NTA are valid and properly adopted bylaws of the corporation.

AFFIRMED.