2000 OK 84

Owen C. SUTTER, an individual, Appellant,

v.

SUTTER RANCHING CORPORATION, an Oklahoma "Family Farming/Ranching Corporation" and its shareholders; Ms. Carol Craiger and Rita K. Walker, Appellees.

No. 94,850.

Supreme Court of Oklahoma.

Oct. 31, 2000.

Larry D. Patton, Oklahoma City, OK, for appellant.

Harry A. Woods, Jeremy Tubb, Crowe & Dunlevy, Oklahoma City, OK, for appellees.

BOUDREAU, Justice:

¶ 1 The dispositive question in this appeal is one of first impression: Does a supermajority provision in the certificate of incorporation as authorized by 18 O.S.1991, § 1006(B)(4) preclude the right of a minority shareholder in a farming and ranching corporation to maintain an action for dissolution of the corporation under 18 O.S.1991, § 953(D)? We answer in the negative. We conclude

that the super-majority provision in the Amended and Restated Certificate of Incorporation of Sutter Ranch Corporation which increased the shareholder voting requirements to 75% of the outstanding shares to dissolve the corporation does not preclude the minority shareholder holding at least 25% of the outstanding shares from seeking judicial dissolution under 18 O.S.1991, § 953(D). We hold the district court erred in granting summary judgment in favor of defendants/appellees. Accordingly, we reverse the summary judgment and remand this cause for further proceedings.

### The Sutter family ranch

¶ 2 For nearly seventy-five years, the Sutter family has operated a cattle ranch on several thousand acres of land in Ellis County. The land was acquired by Owen E. Sutter, the father of L.T. Sutter and the grandfather of Owen C. Sutter, Carol Craiger and Rita K. Walker.[1] Some thirty years ago, L.T. acquired the land and the operation of the ranch from his father. In 1983, L.T. created L–CORN Ranch, Inc., an Oklahoma farming and ranching corporation, and transferred a portion of the ranch land to the corporation. He later transferred other land and assets to L–CORN Ranch. Today, the Sutter family ranch consists of 12,000 contiguous acres of ranch land and the mineral

interests and the livestock and equipment involved in the cattle business.

¶ 3 On several occasions in 1992, L.T. Sutter met with his three children, Owen, Carol and Rita, and discussed operational and tax and estate planning considerations for transfer of his estate to his children. All the children agreed to a corporate format to operate the ranch. Accordingly, the family reorganized L–CORN Ranch by filing an amended and restated certificate of incorporation with the Secretary of State in accordance with the Oklahoma General Corporation Act (OGCA).[2] The name was changed to Sutter Ranch Corporation (Sutter Ranch). The amended and restated certificate of incorporation requires compliance with the special statutes governing farming and ranching corporations.[3] It also has a super-majority provision which requires a vote of holders of 75% of the shares to take specific actions affecting the fundamental nature of the corporation.

¶ 4 L.T. Sutter and Owen, Carol and Rita, the owners of all issued and outstanding shares of capital stock in Sutter Ranch, also entered into a shareholders' agreement in September, 1992. The agreement includes a general restriction on the shareholders' right to sell or otherwise dispose of the shares of stock.[4]

---

**1.** Owen C. Sutter, plaintiff/appellant, will be referred to by name or as plaintiff. Carol Craiger and Rita Walker, defendants/appellees, will be referred to by name or as defendants.

**2.** 18 O.S.1991, §§ 1001, et seq. In 1986 Okla. Sess. Laws, ch. 292, the Oklahoma Legislature replaced the Business Corporation Act with the Oklahoma General Corporation Act. The certificate of incorporation required by § 1006 of the Oklahoma General Corporation Act is the functional equivalent of the articles of incorporation under § 1.208 of the Business Corporation Act, 18 O.S.1981, §§ 1.1, et seq.

Although Sutter Ranch is a farming and ranching corporation, it is governed by the OGCA. 18 O.S.1991, § 1002(A) provides that the OGCA shall be applicable to every corporation authorized to do business in this state.

Since its enactment, various provisions of the OGCA have been amended. Sutter Ranch was incorporated under the 1991 codification of the OGCA, hence this opinion references the 1991 statutes unless a later version controls.

**3.** 18 O.S.1991, §§ 951, et seq.

**4.** The agreement requires that, prior to any transfer, the shares must be offered first to the corporation and then to the individual shareholders. It also sets forth a method for valuing the shares and the discounted value to be paid by the corporation or individual shareholders. The general restriction on the transfer of shares reads:

No sale, assignment, transfer, gift, pledge or other disposition or encumbrance of any Shares now owned or hereafter held by a Shareholder, whether voluntary, involuntary or by operation of law or (in the case of a shareholder which is not a natural person) pursuant to a merger, consolidation, sale of assets or other reorganization, and whether testamentary or inter-vivos, or otherwise, may be made except as permitted by this Agreement and in accordance with its terms.

¶ 5 From its inception in 1992 until 1996, Owen was president and manager of Sutter Ranch. After the death of L.T. Sutter in 1995, the working relationship among his three children began to deteriorate. In late 1996, Carol and Rita removed Owen as president of Sutter Ranch and named Carol to fill the office. Immediately thereafter, Carol relieved Owen of any and all responsibility in connection with the "ranching assets, operations and employees of Sutter Ranch Corporation as well as its mineral leasing activities."

### The judgment denying dissolution

¶ 6 In early 1997, Owen initiated this action in the district court in Ellis County against Sutter Ranch and his sisters. In his first claim, Owen sought dissolution of Sutter Ranch alleging shareholder dissension and oppressive conduct by the majority shareholders.[5] In their answer, defendants denied that plaintiff was entitled to seek dissolution of the corporation alleging that he specifically consented to a provision in the certificate of incorporation of Sutter Ranch which requires the consent of the holders of 75% of the shares to dissolve and liquidate.[6]

¶ 7 Defendants filed a motion for summary judgment on plaintiff's first claim for relief. In the motion, defendants argue that plaintiff specifically consented to a provision in Sutter Ranch's certificate of incorporation that increased the 25% requirement in 18 O.S.1991, § 953(D) to 75%. They contend that plaintiff, who owns only one-third of the shares, cannot bring this action.

¶ 8 In opposition to summary judgment, plaintiff contends that the super-majority provision in the certificate of incorporation relates only to voluntary dissolution by corporate action. He contends that the provi-

sion does not apply to a shareholder seeking dissolution by judicial action pursuant to § 953(D) and that the certificate of incorporation contains no language that restricts his § 953(D) right to seek judicial dissolution.

¶ 9 The district court sustained defendants' summary judgment motion. The court apparently held that by consenting to the super-majority provision in the certificate of incorporation, plaintiff was barred from seeking judicial dissolution. It determined that there was no just reason for delay in entering final judgment upon plaintiff's first claim for relief and directed the filing of a final judgment in favor of defendants. Plaintiff timely filed his petition in error and motion to retain the appeal in this Court.

¶ 10 This Court ordered plaintiff to show cause why the appeal should not be dismissed for lack of an appealable order or recast as a petition for certiorari review of a certified interlocutory order. Upon consideration of the show cause filings, this Court allowed the cause to proceed as an appeal from a final order resolving a separate claim for relief pursuant to 12 O.S.Supp.1999, § 994. This Court granted plaintiff's motion to retain.

¶ 11 A summary judgment disposes solely of issues of law and therefore, it is reviewable by a *de novo* standard.[7] In a *de novo* review, we have plenary, independent and non-deferential authority to determine whether the trial court erred in its application of the law and whether there is any genuine issue of material fact.[8]

### I.

### A corporation must be dissolved in a manner prescribed by statute.

¶ 12 Private corporations are crea-

---

5. In his second claim, plaintiff sought declaratory judgment that his purchase of a single heifer for experimental participation in an embryonic breeding program was not a usurpation of a corporate opportunity. This claim has not been considered in the district court and is not before us.

6. Defendants counterclaimed for breach of fiduciary duty, alleging that plaintiff's purchase of the heifer to participate in a breeding program constituted competition with the corporation's cattle business. They also counterclaimed for

breach of contract, alleging plaintiff's suit violated the certificate of incorporation and the shareholders' agreement. These counterclaims have not been considered in the district court and are not before us.

7. *Manley v. Brown*, 1999 OK 79, 989 P.2d 448, 455.

8. *Kluver v. Weatherford Hospital Authority*, 1993 OK 85, 859 P.2d 1081, 1084.

tures of statute and, like their formation,[9] they can be dissolved only under authority of an act of the legislature.[10] Accordingly, the statutory methods for dissolving a corporation are exclusive, and a corporation cannot be dissolved except in a manner prescribed by statute.[11]

¶ 13 The OGCA recognizes the right of the board of directors and shareholders to act to dissolve their corporation.[12] Under the Oklahoma statutory scheme, the directors of a corporation may adopt a resolution to dissolve the corporation whenever in their discretion the situation warrants dissolution.[13] The resolution to dissolve the corporation by the board of directors must be subsequently approved by a *majority* of the shareholders.[14] Upon approval of the shareholders, a certificate of dissolution is filed with the Secretary of State.[15] This provision

in the OGCA invests in the majority shareholders the right to dissolve the corporation by *corporate action*. It reflects the long-standing notion that shareholders control the business affairs of the corporation.[16]

¶ 14 The OGCA does not provide grounds for the judicial dissolution of a corporation at the request of a shareholder.[17] In the absence of express statutory authority, a court of equity generally will not exercise jurisdiction over a corporation for the purpose of decreeing its dissolution.[18]

¶ 15 While the OGCA contains no provision authorizing judicial dissolution of a corporation at the request of a shareholder,18 O.S. 1991, § 953(D) [19] permits a minority shareholder in a farming or ranching corporation to sue for dissolution of the corporation.[20]

9. Okla. Const., art. IX, § 38 provides that no private corporation shall be created nor licensed to conduct business in the state except by general law. 18 O.S.1991, § 1005 authorizes the formation and organization of corporations for the purpose of conducting and promoting any lawful business in Oklahoma.

10. *Topeka Paper Co. v. Oklahoma Publishing Co.,* 1898 OK 95, 7 Okla. 220, 54 P. 455.

11. *Id.*

12. 18 O.S.1991, § 1096.

13. 18 O.S.1991, § 1096(A). Under § 1096(C), a corporation may be dissolved upon written consent of all shareholders entitled to vote thereon "without action of the directors".

14. 18 O.S.1991, § 1096(B).

15. 18 O.S.1991, § 1096(B) and (D).

16. *Gaines v. Gaines Bros. Co.,* 1936 OK 113, 176 Okla. 583, 56 P.2d 863, 868.

17. The OGCA does authorize the district court to revoke or forfeit a corporate charter in an action by the Attorney General upon a showing of abuse, misuse, or nonuse of corporate powers, privileges or franchises. 18 O.S.1991, § 1104.

18. *Dill v. Johnston,* 1919 OK 79, 72 Okla. 149, 179 P. 608, 610–611. There is a recognized exception to the general rule that courts will not exercise equitable power over a corporation for the purpose of decreeing its dissolution and distributing its assets. A court of equity can, at the request of a minority shareholder, on a showing

of fraudulent mismanagement or misappropriation of funds by the officers, appoint a receiver for a solvent corporation to take charge of its business, and if necessary, to wind up its business.

19. Section 953(D) is part of the farming and ranching business corporation statutes. In summary, these special statutes provide that only a domestic business corporation may engage in farming and ranching activity, § 951(A); shareholders of a farming and ranching business corporation must be natural persons or Oklahoma banks or trust companies, § 951(A)(1); there may not be more than ten shareholders with an exception for lineal descendants, § 951(A)(3); no more than 35% of the income of a farming and ranching business corporation may derive from any source other than farming or ranching or mineral production, § 951(A)(3); business corporations are prohibited from owning, leasing, or holding agricultural land in excess of that amount reasonably necessary to carry out its business function, § 953(A); actions for divestment of agricultural land from business corporations are authorized, § 953(B); and, upon a petition by holders of 25% or more of the shares, the district court is empowered to dissolve the corporation, § 953(D).

20. 18 O.S.1991, § 953(D) reads:

D. Upon the petition to a court of competent jurisdiction by shareholders holding twenty-five percent (25%) or more of the shares in a farming or ranching business corporation the court in its discretion, for good cause shown, may order the corporation dissolved and the assets of such corporation divided in kind pro rata to the shareholders or liquidated and the proceeds of such liquidation divided pro rata

Section 953(D) allows a shareholder holding 25% or more of the shares to seek judicial dissolution of a solvent corporation. It allows the court, in its discretion, to dissolve the corporation against the wishes of the majority shareholders upon a showing of good cause.

## II.

**Oklahoma law permits a corporation, in its certificate of incorporation, to increase the shareholder voting requirements for approval of corporate actions up to any desired amount including unanimity.**

■ ¶ 16 In addition to the matters required to be set forth in a certificate of incorporation,[21] 18 O.S.1991, § 1006(B) allows a corporation to set forth other matters in the certificate. Among those other matters, a corporation may provide for a super-majority provision. Subparagraph (B)(4) of § 1006 reads:

4. Provisions requiring for, *any corporate action,* the vote of a larger portion of the stock or of any class or series thereof, or of any other securities having voting power, or a larger number of the directors, than is required by the provisions of the Oklahoma General Corporation Act;

(Emphasis added.)

This subparagraph allows a corporation, by way of a super-majority provision, to increase the voting requirements for approval of *corporate actions* by shareholders up to any desired amount, including unanimity.

■ ¶ 17 Under the statute, a corporation may adopt a super-majority provision that increases the voting requirements for any *corporate action* that is subject to voting requirements under the OGCA. The super-majority provision may relate to ordinary or routine *corporate actions* or those *corporate actions* that affect the fundamental nature of

the corporation such as merger or consolidation, sale of all or substantially all of the assets, and dissolution. Under the OGCA, fundamental changes require the affirmative vote of a majority of the shares entitled to vote[22] rather than a majority of the shares constituting a quorum at a shareholders meeting.[23]

## III.

**The super-majority provision in the amended and restated certificate of incorporation of Sutter Ranch does not preclude plaintiff from petitioning the court for dissolution of the corporation under 18 O.S.1991, § 953(D).**

■ ¶ 18 The board of directors of L–CORN Ranch, Inc. consented to the filing of an amended and restated certificate of incorporation which included a super-majority provision, pursuant to § 1006(B)(4), increasing the voting requirements for *corporate actions* relating to three changes affecting the fundamental nature of the corporation. The super-majority provision reads as follows:

NINTH The affirmative vote of the holders of at least seventy-five percent (75%) of the outstanding shares of the Corporation entitled to vote thereon shall be required *before the Corporation can take the following actions:*

(a) merge or consolidate with or into any other corporation, entity or association;

(b) enter into any agreement for the sale, lease or exchange of all or substantially all of the assets and property of the Corporation; or

(c) *dissolve and liquidate.*

(Emphasis added.)

¶ 19 Defendants argue that this super-majority provision is a bar to plaintiff's right as a minority shareholder to sue for judicial dissolution under § 953(D).[24] Plaintiff, on

to the shareholders all according to the procedures set out for the dissolution and liquidation of business corporations under the Oklahoma General Corporation Act.

21. The requirements of a certificate of incorporation are enumerated in 18 O.S.1991, § 1006(A).

22. 18 O.S.1991, § 1081 (merger), § 1092 (sale of assets), and § 1096 (dissolution).

23. 18 O.S.1991, § 1061.

24. Defendants argue that plaintiff expressly agreed to seek dissolution of Sutter Ranch **only**

the other hand, argues that the provision applies only to dissolution by corporate action and does not restrict his right to seek a judicial dissolution. Both parties argue that this super-majority provision unambiguously supports their respective interpretations.

¶ 20 Generally, the certificate of incorporation constitutes a contract between the corporation and its shareholders and the rules governing the interpretation of contracts apply to the interpretation of a certificate of incorporation.[25] If the language of the certificate of incorporation is clear and unambiguous, it does not require construction by this Court.[26]

¶ 21 We find that the super-majority provision in Sutter Ranch's certificate of incorporation is unambiguous. The phrase "before the Corporation can take the following actions" in the provision clearly refers to three specified actions of the corporation subject to voting requirements under the OGCA. The provision requires an affirmative vote of holders of at least 75% of the outstanding shares before the corporation can take any of the three specified actions affecting the fundamental nature of the corporation.

¶ 22 The super-majority provision does not affect the right of a minority shareholder to seek judicial dissolution under § 953(D).

The super-majority provision refers to three specific *actions by the corporation* all of which are subject to voting requirements under the OGCA. The filing of a petition seeking judicial dissolution under § 953(D) is not an *action of the corporation*, rather it is an act of a qualified shareholder exercising a right granted by statute to petition a court to dissolve involuntarily a corporation by judicial decree. Because the filing of a § 953(D) petition is not a *corporate action*, it is not subject to the voting requirements of the OGCA. While § 953(D) imposes a standing requirement that the petition be filed by holders of at least 25% of the outstanding shares, a petition for dissolution may be filed, as in this instance, by a qualifying minority shareholder against the wishes of all other shareholders.

¶ 23 In support of their position that the super-majority provision bars plaintiff's right to sue for judicial dissolution, defendants rely on *Leventhal v. Atlantic Finance Corporation*, 316 Mass. 194, 55 N.E.2d 20 (1944). Defendants' reliance on this case is misplaced. The dispute in *Leventhal* did not concern a super-majority provision but involved a contract between the only two stockholders of the corporation that "expressly prohibited either stockholder from causing a

by joining with holders of at least 75% of Sutter Ranch shares. Defendants contend that plaintiff made this agreement when 1) he signed the shareholders' agreement requiring that the corporation and other shareholders have the right of first refusal prior to any transfer of shares, and 2) he consented, as a member of the board of directors of L–CORN Ranch, Inc., to the amended and restated certificate of incorporation with the super-majority provision. The essence of this argument is that these integrated documents, when read together, constitute a waiver of a minority shareholder's right to seek judicial dissolution. Because we conclude that neither document addresses judicial dissolution, we reject defendants' argument.

25. Recognized principles governing interpretation of a certificate of incorporation include: 1) a certificate of incorporation constitutes a contract between the state and the corporation and among the shareholders; 2) the rules and principles that govern the interpretation of statutes and contracts apply to the interpretation of a certificate of incorporation; 3) when the language of a certificate of incorporation is clear and unambiguous it does not require construction by the

court; 4) if the meaning of a certificate of incorporation is not clear, the language used should be read considering the circumstances, the ends to be accomplished, the interpretation placed upon the parties themselves, and other evidence bearing on the question of its meaning. *Humphrey v. Delano Community Development Corporation*, 571 N.W.2d 233 (Minn.1997), and 556 N.W.2d 922 (Minn.App.1996); *Twin Lakes Village Property Association, Inc. v. Crowley*, 124 Idaho 132, 857 P.2d 611 (1993); *Turner v. Hi–Country Homeowners Association*, 910 P.2d 1223 (Utah 1996); *National Board of Examiners for Osteopathic Physicians and Surgeons, Inc. v. American Osteopathic Association*, 645 N.E.2d 608 (Ind.App. 4 Dist.1994); *Phillips v. National Trappers Association*, 407 N.W.2d 609 (Iowa App. 1987); *Missouri State Teachers Association v. St. Louis Suburban Teachers Association*, 622 S.W.2d 745 (Mo.App.1981); and *Walden Investment Group v. Pier 67, Inc.*, 29 Wash.App. 28, 627 P.2d 129 (1981).

26. *Id.*

dissolution except as provided therein."[27] While there is a shareholders' agreement in this case, it does not address dissolution or the right of a shareholder to seek judicial dissolution of the corporation.[28]

¶24 The super-majority provision reaches actions taken by the corporation subject to the voting requirements of the OGCA. The language of the provision does not prevent a minority shareholder from seeking judicial dissolution of the farming and ranching corporation. Accordingly, we conclude that the super-majority provision in the amended and restated certificate of incorporation of Sutter Ranch does not preclude plaintiff from petitioning the court for dissolution under 18 O.S.1991, § 953(D).

### Summary

¶25 Plaintiff's first claim for relief sought to dissolve the corporation under 18 O.S. 1991, § 953(D). Under that section, plaintiff is entitled to maintain the claim until he has an opportunity to make a showing of good cause for dissolving Sutter Ranch Corporation. The super-majority provision, as authorized in 18 O.S.1991, § 1006(B)(4) and set forth in the Sutter Ranch certificate of incorporation, does not bar plaintiff's right to maintain his § 953(D) claim. Summary judgment in favor of defendants on plaintiff's claim for dissolution is reversed.

### SUMMARY JUDGMENT REVERSED AND CAUSE REMANDED FOR FURTHER PROCEEDINGS.

¶26 ALL JUSTICES CONCUR.

27. *Leventhal v. Atlantic Finance Corporation,* 55 N.E.2d at 26.

28. *Leventhal, supra.,* decided that the stockholders waived their right to seek dissolution except as provided in their contract. Because defendants rely upon a super-majority provision that relates only to corporate actions and the shareholders' agreement does not mention the right to cause dissolution, we need not consider whether the right created in § 953(D) may be waived.